**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

YAZMIN GONZALEZ, individually and behalf
of classes of all persons and entities similarly
situated,

        Plaintiff,

    v.

AMERICAN-AMICABLE LIFE INSURANCE
COMPANY OF TEXAS,

        Defendant.

Case No. 1:24-cv-00065-RP

## DEFENDANT AMERICAN-AMICABLE'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT

Defendant American-Amicable Life Insurance Company of Texas ("American-Amicable") hereby respectfully moves to dismiss the Class Action Complaint (Dkt. 1, "Complaint") filed by Plaintiff Yazmin Gonzalez ("Plaintiff") in this case in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) and/or 12(b)(1) and, in support thereof, respectfully submits the following memorandum of law.

## I.    INTRODUCTION

In her threadbare Complaint, Plaintiff alleges, in a wholly conclusory fashion and without requisite factual support, that American-Amicable violated certain provisions of the federal Telephone Consumer Protection (47 U.S.C. § 227, *et seq*., the "TCPA"). Plaintiff's claims rest squarely on ill-described phone calls, purportedly made to her cell phone without her consent by a **_third party_** identified only as "James" from "Senior Benefits." However, Plaintiff pleads nothing in her Complaint indicating that American-Amicable bears any legal responsibility for the alleged calls. It is also axiomatic that merely regurgitating the legal elements of a claim without supporting facts, as Plaintiff has done here, is insufficient to meet federal pleadings standards or to withstand dismissal in any federal case. Therefore, Plaintiff's Complaint should be dismissed for the following reasons:

**First**, the Complaint should be dismissed under Rule 12(b)(6), as Plaintiff fails to state

plausible claims under the TCPA or to plead adequate facts supporting such claims. To begin, to successfully plead ***any*** TCPA claim under any provision and avoid dismissal, all plaintiffs must first adequately allege a viable theory of liability under the TCPA—*i.e.,* direct or vicarious liability. In this case, Plaintiff fails to plead sufficient (or any) non-conclusory facts supporting a plausible inference either that American-Amicable: (i) ***itself***, and not a third party, "***physically***" placed each call at issue, as required to plead direct TCPA liability; or (ii) was in a common law agency relationship with (the touchstone of which is having sufficient "control" over) any third party who did physically call her and its calling campaign,[1] as required to plead vicarious TCPA liability. This defect ***alone*** is fatal to Plaintiff's ***entire*** Complaint. Indeed, countless federal courts in and beyond the Fifth Circuit have routinely dismissed such bald TCPA claims at the pleadings stage in their entirety under Rule 12(b)(6) on these bases. Plaintiff's Complaint should suffer the same fate here.

**Second**, beyond the threshold issues above, Count II of the Complaint fails and should be dismissed under Rule 12(b)(6) for the additional reason that Plaintiff fails to plead any facts indicating that there was a violation of the TCPA's National "Do-Not-Call" ("DNC") Registry provision (*i.e.,* 47 U.S.C. § 227(c)) and its related implementing regulations here.[2] On this front, Plaintiff fails to plead actual facts, beyond her bald conclusions, sufficient to show, *inter alia*, that: (i) she received more than one "telephone solicitation" in a 12-month period that was physically "initiated" "by or on behalf of the same entity" or (ii) she is a "residential telephone subscriber who has registered … her [own] telephone number" on the National DNC Registry, as is also required to state such a claim. Thus, Count II should be dismissed on any one or all of these additional grounds.

**Third**, Plaintiff's conclusory allegations that any TCPA violation here was "willful" or

---

[1] As discussed below, general control over an agent is insufficient, and what matters in a TCPA case is having control over the "manner and means" of how the call campaign was conducted <u>specifically</u>.

[2] Though not further discussed below, American-Amicable does not concede that any call was "prerecorded" under Section 227(b) of the TCPA, as invoked in Count I of the Complaint.

"knowing," such that she would be entitled to treble damages, likewise do not meet federal pleadings standards. Therefore, those allegations should be dismissed under Rule 12(b)(6), at the minimum.

**Lastly**, if the Court does not dismiss the entire Complaint (and it should), it should still dismiss Plaintiff's requests for injunctive relief pursuant to Rule 12(b)(1) for lack of standing under Article III of the U.S. Constitution, at the minimum. In this regard, to have Article III standing to seek injunctive relief in any federal case, all plaintiffs must plead non-conclusory facts demonstrating they are at risk of a possible future injury by the defendant. Plaintiff pleads no such facts here.

## II.   RELEVANT ALLEGATIONS

Put simply, Plaintiff's Complaint is long on conclusions and speculation and woefully short on actual plausible facts (if any), and in the end it cannot survive dismissal under federal pleadings standards. In pertinent part, Plaintiff alleges that her "residential telephone number" (which is purportedly "assigned to a cellular service") "has been on the National Do Not Call Registry since February 15, 2022." Dkt. 1, ¶¶ 25-26. She claims that she "received a total of 22 pre-recorded telemarketing calls [on her cell phone number], promoting American-Amicable's services, including a June 19, 2023 call on which she was sold an American-Amicable policy." *Id.* ¶ 28. Plaintiff further claims that "[t]his included 17 calls from between June 2, 2023 and June 19, 2023, from various caller identification numbers." *Id.* ¶ 29. Beyond the one alleged call on June 19, 2023, which originated from a caller using a 737 area code number according to her Caller ID (*see id.* ¶ 33), however, she does <u>not</u> provide the originating phone number for <u>any other</u> alleged calls. She also admits that "she did not answer several of the calls" (*id.* ¶ 30) and thus pleads nothing about their content, let alone facts identifying who placed them or connecting them with American-Amicable.

Rather, Plaintiff at best alleges that, "[o]f those that [she] answered, the calls all used the same artificial voice message, which stated that it was 'James' from 'Senior Benefits' calling to sell

a life insurance party. [*sic*]" *Id*. ¶ 31. As to the one call on June 19, 2023, Plaintiff alleges that she "played along with the robot and subsequent agents" and "was ultimately transferred [by the initial caller] to an individual named 'Michael,' who sold her an American-Amicable final expense policy" on that call. *Id*. ¶¶ 34-35. She alleges that "[d]espite buying the policy, the calls continued, once on the very same day" and that she "ultimately received an additional four calls from Defendants [*sic*]," but also that all "the calls appear to have ceased on June 30, 2023." *Id*. ¶ 38.

## III.   <u>APPLICABLE LEGAL STANDARDS</u>

Rule 12(b)(6) provides for dismissal where a plaintiff fails to sufficiently state a claim for relief. In this regard, any claim brought in federal court mandates the pleading of sufficient facts. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). A "bare assertion" and "conclusory allegation[s]" will not suffice. *Id*. Naked allegations without factual enhancements "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations omitted). A "formulaic recitation of the elements" of a claim also fails to meet the requisite pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also id*. (holding that all federal pleadings must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation").

Further, "although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead 'specific facts, not mere conclusory allegations'" to avoid dismissal. *Pelayo v. Wells Fargo Bank, N.A.*, 2014 WL 3513207, at *2 (W.D. Tex. July 14, 2014) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994)). Therefore, while federal district courts must generally accept a plaintiff's well-pled factual allegations as true when ruling on a Rule 12(b)(6) motion, they need <u>not</u> accept as true "[c]onclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp*., 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). *See also Bancroft Life & Cas.*

*ICC, Ltd. v. GRBR Ventures, L.P.,* 12 F. Supp. 3d 980, 988 (S.D. Tex. 2014) ("The court should not 'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'") (quoting *R2 Invs. LDC v. Phillips,* 401 F.3d 638, 642 (5th Cir. 2005)) (internal punctuation omitted); *In re Franklin Bank Corp. Sec. Litig*., 782 F. Supp. 2d 364, 389 (S.D. Tex. 2011), *aff'd sub nom.* 464 F.App'x 334 (5th Cir. 2012) (under Rule 12(b)(6), "unwarranted speculation … need not be afforded any presumption of veracity by this Court").

A lack of Article III standing further warrants dismissal of a complaint under Rule 12(b)(1), as the Court lacks proper subject matter jurisdiction over such claims. *See*, *e.g.*, *Perry v. Brassell,* 2018 WL 5733173, at *2 (W.D. Tex. Oct. 18, 2018). To show Article III standing generally, Plaintiff must plausibly allege that: (i) she suffered a concrete "injury in fact," (ii) there is a causal connection between his injury and the conduct complained of (*a.k.a.*, "traceability"), and (iii) his injury must be capable of being redressed by a favorable decision (*a.k.a.*, "redressability"). *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). As the party invoking federal jurisdiction, Plaintiff indisputably "bears the burden of establishing these elements." *Id.* at 561.

Additionally, to have Article III standing to seek injunctive relief, Plaintiff must allege plausible facts establishing "continuing, present adverse effects" traceable to American-Amicable's conduct. *O'Shea v. Littleton,* 414 U.S. 488, 495-96 (1974). Put differently, to have standing for injunctive relief in any federal case, all plaintiffs must adequately plead that "the threatened injury is 'certainly impending,' or [that] there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). Failure to plausibly allege this warrants dismissal on standing grounds. *See, e.g., Miller v. Time Warner Cable Inc.,* 2016 WL 7471302, at *2–4 (C.D. Cal. Dec. 27, 2016) (dismissing request for injunctive relief in TCPA case on standing grounds where there were no allegations suggesting possible future harm). However, like under Rule

5

12(b)(6), conclusory allegations need not be accepted as true under Rule 12(b)(1), either. *See, e.g.,*

*Williams v. Ascension Par. Sch. Bd.,* 2011 WL 2011481, at *3 (M.D. La. May 16, 2011).

IV.   **ARGUMENT**

In Count I of her Complaint (*see* Dkt. 1, ¶¶ 57-60), Plaintiff invokes Section 227(b) of the

TCPA, which provides *inter alia* that no person shall "make any call (other than a call made for

emergency purposes or made with the prior express consent of the called party) using … an artificial

or prerecorded voice … to any telephone number assigned to a … cellular telephone service…." 47

U.S.C. § 227(b)(1)(A)(iii); *see also* 47 C.F.R. § 64.1200(a)(1) & (2). In Count II (*see* Dkt. 1, ¶¶ 62-

65), Plaintiff seeks relief under the National DNC Registry provision in Section 227(c) of the TCPA

which, along with its implementing regulations, prohibits *inter alia* the "initiat[ion]"of more than

one "telephone solicitation" call "by or on behalf of the same entity" in a 12-month period to a

"residential telephone subscriber who has registered his or her telephone number" on the National

DNC Registry. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). As demonstrated below, however,

Plaintiff fails to plead actual ***facts*** supporting these elements, and she relies instead on threadbare

conclusions and speculation, which does not come close to meeting federal pleading standards.

A.   **The Entire Complaint Should Be Dismissed Under Rule 12(b)(6) Because Plaintiff Fails to Plausibly Allege a Viable Theory of TCPA Liability.**

For starters, the entire Complaint should be dismissed under Rule 12(b)(b) because Plaintiff

does not plead sufficient facts supporting a viable theory of liability against American-Amicable in

this case. There are two potential theories of liability under the TCPA: (i) direct liability; or (ii)

vicarious liability. *See Rogers v. Postmates Inc.*, 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020)

(citing *Thomas v. Taco Bell Corp.,* 582 F.App'x 678, 679 (9th Cir. 2014)). As such, to be liable

under any provision of the TCPA, the defendant "must either (1) ***directly make*** the call, or (2) have

an ***agency relationship*** with the person who made the call." *Pascal v. Agentra, LLC*, 2019 WL

6

5212961, at *2 (N.D. Cal. Oct. 16, 2019) (emphasis added) (quoting *Abante Rooter & Plumbing v. Farmers Grp., Inc*., 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018)). *Accord Cunningham v. Daybreak Solar Power, LLC*, 2023 WL 3985245, at *2 (N.D. Tex. June 13, 2023) (citing *Cunningham v. Politi,* 2019 WL 2519568, at *5 (E.D. Tex. Apr. 30, 2019), *report and rec. adopted,* 2019 WL 2524736 (June 19, 2019)). Failure to adequately plead these theories warrants dismissal of any TCPA claim in its entirety, even if the plaintiff may have pled facts supporting other essential elements. *See, e.g., Nelums v. Mandu Wellness, LLC*, 2023 WL 5607594, at *9 (D.N.M. Aug. 30, 2023) ("Because Plaintiff fails to satisfy the first elements of the TCPA and [an equivalent state statute]—that Defendants were directly or vicariously liable for the text messages—the Court does not reach Defendants' arguments regarding whether Plaintiff adequately plead the other elements" of the asserted claims.); *Cunningham v. Daybreak Solar Power*, 2023 WL 3985245, at *2-3 (dismissing TCPA case **with prejudice** brought by some of the same counsel representing Plaintiff here, and asserting the same TCPA claims, on these bases alone). As shown below, Plaintiff's Complaint here fails to adequately allege either theory of liability, warranting its complete dismissal.

Indeed, as to the former theory, it is well-accepted both in and beyond the Fifth Circuit that direct liability under the TCPA applies **only** to persons or entities that "initiate" telemarketing calls, and that to "initiate" in this context means to "physically place" a phone call or send a text message. *Sheski v. Shopify (USA) Inc.,* 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (citing *In re Dish Network, LLC*, 2013 WL 1934349, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013)). *Accord Cunningham v. Daybreak Solar Power*, 2023 WL 3985245, at *2-3 (citing *Hunsinger v. Dynata LLC,* 2023 WL 2377481, at *5 (N.D. Tex. Feb. 7, 2023), *report and rec. adopted,* 2023 WL 2386710 (Mar. 4, 2023) and *Cunningham v. Lifestyles Dev., LLC*, 2019 WL 4282039, at *3 (E.D. Tex. Aug. 8, 2019), *report and rec. adopted,* 2019 WL 4277507 (Sept. 10, 2019)). *See also Brownlee v. Allstate Ins. Co.,* 2021

WL 4306160, at *1 (N.D. Ill. Sept. 22, 2021) (holding that, to avoid dismissal, all TCPA plaintiffs must allege facts to "allow the Court to reasonably infer that defendant is [directly] liable for ***each call***" at issue) (emphasis added); *Metzler v. Pure Energy USA LLC*, 2023 WL 1779631, at *6 (S.D.N.Y. Feb. 6, 2023) (dismissing on this basis, holding that all TCPA plaintiffs must first "allege facts from which the Court can plausibly infer that [d]efendant has direct liability, even if it is also plausible that a third party made the call" to avoid dismissal). This rule applies equally to claims brought under the DNC provisions, as invoked here. *See, e.g., Smith v. Direct Building Supplies, LLC*, 2021 WL 4623275, at *4 (E.D. Pa. Oct. 7, 2021) (dismissing DNC claim on this basis).

Thus, federal courts across the country have routinely dismissed direct TCPA liability claims at the pleadings stage under Rule 12(b)(6) that, like Plaintiff's here, lack sufficient factual allegations demonstrating that the defendant actually "made" or "initiated" the calls at issue in the sense of "'***tak[ing] the steps necessary to physically place a telephone call.***'" *Cunningham v. Daybreak Solar Power,* 2023 WL 3985245, at *2 (quoting *Cunningham v. Lifestyles Dev., LLC*, 2019 WL 4282039, at *3).[3] *See also Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019) (dismissing and holding "at the pleadings stage, [a TCPA] plaintiff must allege facts to support his conclusion or belief that defendant is the party that [physically] made the [violative] calls").

In this regard, however, "[m]erely alleging that [a defendant] 'made' or 'initiated' [a] call"—

---

[3] While various provisions of the TCPA use the terms "make" or "initiate" somewhat interchangeably, courts evaluating and ultimately dismissing conclusory direct TCPA liability claims like Plaintiff's (including those cited above and below, and many others) have uniformly held that "make" or "initiate" in this context means to "physically" place the phone calls at issue. *See, e.g., Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *3–5 (N.D. Cal. Mar. 28, 2018); *Childress v. Liberty Mut. Ins. Co.*, 2018 WL 4684209, at *3 (D.N.M. Sept. 28, 2018); *Hicks v. Alarm.com*, 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020). *See also In re Rules and Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 7980 (Jul. 10, 2015) (there must be a "***direct connection*** between a person or entity and the making of a call" for direct liability to attach) (emphasis added).

like what Plaintiff did, at best—"is not sufficient to allege a [direct] TCPA [liability] claim" or to avoid dismissal under Rule 12(b)(6), without more. *Frank v. Cannabis & Glass, LLC,* 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019). *See also Cunningham v. Daybreak Solar Power*, 2023 WL 3985245, at *2 ("At the pleading stage, the plaintiff must allege facts to support claim that the defendant is the party that [physically] initiated the phone calls."). This Court should rule similarly.

As applied here, Plaintiff fails to plead actual facts, beyond her bald conclusions, supporting a plausible inference that American-Amicable itself (as opposed to some unidentified third party) physically placed any of the calls at issue, as is indisputably required to plead direct TCPA liability and avoid dismissal here. Indeed, her Complaint is more notable for what facts it does <u>not</u> contain, rather than what few (if any) facts it does. For example, Plaintiff does <u>not</u> allege, *inter alia*, that: (i) American-Amicable owns or uses any of the numbers allegedly used to call her;[4] (ii) any purported "artificial voice message" she received identified American-Amicable (and, instead, she concedes the messages identified a ***third party*** called "Senior Benefits"); (iii) she called any of those numbers back and reached American-Amicable; (iv) American-Amicable's name appeared on her Caller ID for any call; or (v) any person with whom she spoke identified themselves as an American-Amicable "employee"—all of which could support an inference of direct TCPA liability in some cases, as other courts have held. *See, e.g., Smith v. Direct Building Supplies, LLC*, 2021 WL 4623275, at *3 (dismissing on this basis where complaint lacked such allegations); *Doyle v. GoHealth, LLC*, 2023 WL 3984951, at *4–6 (D.N.J. Mar. 30, 2023) (dismissing on this basis where the plaintiff did "not allege that the number associated with the call …belonged to [d]efendant"); *Aaronson*, 2019 WL 8953349, at *2 (dismissing on this basis, holding: "[W]ithout any facts to explain why plaintiff believes the identified phone number is owned by [the defendant], ... plaintiff has failed to plead

---

[4] Plaintiff only provides <u>one</u> such number in any event, despite her claiming there are 22 calls at issue. *See* Dkt. 1, ¶¶ 28, 33 (alleging "Plaintiff answered a call from the caller ID 737-310-3817").

facts sufficient to support a theory of direct liability under the TCPA because plaintiff's allegations do not show plausibly that [the defendant] actually, physically initiated the telephone calls at issue.").

At best, Plaintiff alleges that she "was ***ultimately transferred*** [by an initial caller] to an individual named 'Michael,' who sold her an American-Amicable final expense policy" during <u>one</u> call. Dkt. 1, ¶¶ 33-35 (emphasis added).[5] However, myriad courts have correctly recognized that merely transferring an initial call to a defendant does <u>not</u> support an inference that the defendant itself physically placed the initial call and, thus, does not suffice for direct TCPA liability. *See, e.g., Cunningham v. Daybreak Solar Power*, 2023 WL 3985245, at *2 (dismissing in a similar case, where the plaintiff eventually spoke to defendant's employee after an initial prerecorded message identifying a third party, holding such "facts failed to show whether [d]efendant physically initiated the phone call or whether the call was instead placed by a third-party telemarketer") (internal punctuation omitted); *Landy v. Nat. Power Sources, LLC*, 2021 WL 3634162, at *3 (D.N.J. Aug. 17, 2021) (dismissing, finding that mere allegations the initial unidentified caller transferred plaintiff to defendants insufficient for direct TCPA liability, without more); *Barnes v. SunPower Corp.,* 2023 WL 2592371, at *3 (N.D. Cal. Mar. 16, 2023) (same); *Childress,* 2018 WL 4684209, at *3-4 (same). This distinction is of critical importance in a TCPA case like this one, because ***it is the party that transfers the call who physically placed it***, and not the party who received the transferred call.

Moreover, it is equally well-established that a call merely offering the defendant's products, identifying the defendant by name, or made by a caller associated with the defendant in some fashion—which is <u>all</u> that Plaintiff alleges here, at best—is not enough to plausibly allege direct TCPA liability or to avoid dismissal on that basis, without more. *See, e.g., Cunningham v. Daybreak Solar Power*, 2023 WL 3985245, at *2 (dismissing on this basis despite similar allegations); *see also*

---

[5] Plaintiff does not allege that this person stated he was an American-Amicable ***employee***, let alone that he confirmed that the initial call prior to the transfer was initiated by American-Amicable itself.

*Bennett v. Celtic Ins. Co.,* 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022) (dismissing, holding that "a defendant 'generally does not initiate calls [within the meaning of the TCPA] placed by third-party telemarketers,' even if the third party had acted on its behalf."); *Abante Rooter*, 2018 WL 288055, at *4 (allegations plaintiff received a call from someone purportedly calling on behalf of the defendant and who identified defendant by name insufficient for direct liability); *Scruggs v. CHW Grp., Inc.,* 2020 WL 9348208, at *7-10 (E.D. Va. Nov. 12, 2020) (conclusory allegations one caller expressly stated he/she was "associated with" the defendant and identified defendant by name insufficient for direct or vicarious TCPA liability purposes); *Meeks*, 2018 WL 1524067, at *1-5 (finding no direct liability, even though at-issue text identified defendant by name and identified the defendant's website). In short, that Plaintiff was eventually transferred to and sold an American-Amicable policy by "Michael" on one call is of no moment and does not suffice to plausibly allege a direct TCPA liability theory here. *See also Brownlee*, 2021 WL 4306160, at *1 ("Defendant is not the sole seller of car insurance. Numerous other companies sell car insurance. Further, spoofing is not unique; it is entirely possible that another car insurance company similarly engaged in spoofing to contact the plaintiff."). Therefore, the Complaint should be dismissed on direct liability grounds.

Lastly, other than employing a few legal buzzwords—like "agents" or calls being made "on behalf of American-Amicable" (*see* Dkt. 1, ¶¶ 34, 44)—Plaintiff does not assert any factual allegations supporting an inference that American-Amicable was in a common law agency relationship with any third party that called her, let alone that American-Amicable had any "control" over the "manner and means" of any third party caller's call campaign (which is the key touchstone of vicarious liability in a TCPA case[6]), even in a conclusory fashion. Therefore, the Complaint is

---

[6] *See, e.g., Cunningham v. Daybreak Solar Power,* 2023 WL 3985245, at *3; *Callier v. SunPath Ltd.,* 2020 WL 10285659, at *3 (W.D. Tex. Aug. 10, 2020); *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *6 (W.D. Wash. Mar. 27, 2023).

subject to dismissal on vicarious liability grounds, as well. *See, e.g., Cunningham v. Daybreak Solar Power,* 2023 WL 3985245, at *3 (dismissing where the "[p]laintiff allege[d] no facts indicating that Defendant had any sort of control over" the alleged caller) (citing *Callier v. SunPath Ltd.,* 2020 WL 10285659, at *3); *Cunningham v. Lifestyles,* 2019 WL 4282039, at *5 (dismissing where complaint was "completely devoid of any facts showing that [defendant] had control over any other defendant, agent, or caller"); *Moreland v. SunPath, Ltd.,* 2021 WL 6773100, at *3 (E.D. Tex. Sept. 10, 2021) (dismissing where agency allegations were merely conclusory) (citing *Horton v. SunPath, Ltd.,* 2021 WL 982344 (N.D. Tex. Feb. 16, 2021), *report and rec. adopted,* 2021 WL 977065 (Mar. 15, 2021)).

In short, that Plaintiff was transferred by one caller to someone who sold her an American-Amicable policy does not show that American-Amicable had any control over the caller or its call campaign, and thus is irrelevant for vicarious TCPA liability purposes. *See, e.g., Bank v. Vivint Solar, Inc.,* 2019 WL 2280731, at *3 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted,* 2019 WL 1306064 (Mar. 22, 2019) ("The existence of some connections between the defendant and the maker of the call will not suffice" for vicarious TCPA liability.); *Clemons v. State Farm Mut. Auto. Ins. Co.,* 2020 WL 4193997, at *2–6 (C.D. Ill. July 21, 2020) (dismissing TCPA case against insurance company on vicarious liability grounds where plaintiff conclusorily alleged, *inter alia,* the callers "invoked" its "brand" on the calls but otherwise "fail[ed] to explain how [d]efendant controlled any aspect of the telemarketing calls, such as their time, volume, or quality" or to plead facts suggesting the defendant's "control over the alleged telemarketers as to the calls at issue"); *Cunningham v. Health Plan Intermediaries Holdings, LLC,* 2018 WL 835222, at *6 (N.D. Ill. Feb. 13, 2018) (rejecting plaintiff's argument that third party telemarketers had apparent authority "simply because they mentioned Defendants' products on their calls and sent him paperwork featuring Defendants' names"); *Hale v. Teledoc Health, Inc.,* 2021 WL 1163925, at *4 (S.D.N.Y. Mar. 25, 2021) ("[T]he

inclusion of [the defendant's] services in [the third party caller's] insurance bundle, alone, is insufficient to permit even a circumstantial inference that [the third party caller] called plaintiffs at [the defendant's] direction or subject to [the defendant's] control. Plaintiffs' conclusory allegations to the contrary are insufficient to 'nudge' plaintiffs' claims from conceivable to plausible.").

All told, Plaintiff's "either/or" pleading tactic has been rejected time and again by countless courts. Because Plaintiff does not properly allege any specific, non-conclusory facts suggesting that American-Amicable itself "physically" called her or had any "control" over a third party who did, this Court should dismiss her Complaint in its entirety under Rule 12(b)(6). *See, e.g.*, *Cunningham v. Daybreak Solar Power,* 2023 WL 3985245, at *3; *Nelums,* 2023 WL 5607594, at *9.

### B.     Count II of the Complaint Should Also Be Dismissed Because Plaintiff Fails to Plead Facts Supporting Other Essential Elements of a TCPA DNC Claim.

Beyond her failure to plead a viable direct and vicarious liability theory, which alone is fatal to her entire Complaint, Plaintiff's TCPA DNC claim in Count II fails on several more levels:

**First**, on their face, the TCPA's implementing DNC regulations can only be invoked by a "residential telephone subscriber *who has registered his or her telephone number*" on the National DNC Registry. 47 C.F.R. § 64.1200(c)(2) (emphasis added). Courts have recognized that the plain language of this regulation[7] unambiguously requires pleading that the plaintiff actually "registered his or her [own] telephone number" on the DNC Registry to avoid dismissal. *See, e.g., Rombough v. Robert D. Smith Ins. Agency, Inc.,* 2022 WL 2713278, at *2-4 (N.D. Iowa June 9, 2022) (thoroughly

---

[7] *See also Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 951 (9th Cir. 2009) (concluding the TCPA's statutory text is unambiguous, holding: "The preeminent canon of statutory interpretation requires us to presume that [the] legislature says in a statute what it means and means in a statute what it says there. Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous.") (quoting *McDonald v. Sun Oil Co.,* 548 F.3d 774, 780 (9th Cir. 2008)); *Suttles v. Facebook, Inc.,* 461 F. Supp. 3d 479, 482-88 (W.D. Tex. 2020) ("The starting point for interpreting a … regulation is its plain language.") (citing *U.S. v. Fafalios*, 817 F.3d 155, 159 (5th Cir. 2016)) (dismissing where plaintiff did not allege a TCPA violation based on the statute's plain language).

analyzing § 227(c), dismissing claim *with prejudice* under Rule 12(b)(6), and holding the "plain [statutory] language provides no distinction for a telephone number that had previously been registered on the national do-not-call registry by someone else"); *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *4 (dismissing DNC claim, in part, on this basis where two plaintiffs pled that their numbers were registered on the Registry but not who registered them, noting that "the numbers could have been registered by previous owners of those numbers rather than by [p]laintiffs themselves" and that such "facts that are easily within the knowledge of Plaintiffs and can be pleaded to remove any doubt about whether [p]laintiffs … actually registered their own numbers on the DNC list").

In this regard, Plaintiff does <u>not</u> allege that ***she herself*** (and not some other party) registered the cell number upon which she received the alleged calls on the Registry, only that it "has been on the National Do Not Call Registry since February 15, 2022." Dkt. 1, ¶ 25. This fact is within her knowledge and could easily be pled, if it exists. That it was not is telling. Regardless, applying the plain language of the DNC regulations here, which this Court must do under binding federal law, Count II should be dismissed on this basis alone. *See, e.g., Rombough,* 2022 WL 2713278, at *2-4; *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *4; *Suttles,* 461 F. Supp. 3d at 482-88.[8]

**<u>Second</u>**, it is well-settled that TCPA's National DNC Registry restrictions, on their face, apply only to "***residential*** telephone subscribers." 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2) (emphasis added). *See also Cunningham v. Politi,* 2019 WL 2517085, at *4 (dismissing under Rule

---

[8] American-Amicable acknowledges that, in *Callier v. Am.-Amicable Life Ins. Co. of Texas,* 2022 WL 17732717 (W.D. Tex. Oct. 18, 2022), Judge Montalvo ruled differently on this point. *See id.* at *6 ("While it is possible a third-party may have registered a plaintiff's phone number before a plaintiff acquired it, this is unlikely given how infrequently people change numbers."). Respectfully, however, while Judge Montalvo was not persuaded by what he called the *Rombough* court's "nitpicky formality" on this issue, he did not consider the *Rogers* decision cited above. Nor did Judge Montalvo appear to properly apply the plain language of the regulation above, as the courts in *Rombough* and *Rogers* apparently did and as Judge Yeakel of this District did in the *Suttles* case. Thus, American-Amicable respectfully submits that the *Callier* decision should <u>not</u> be applied here.

12(b)(6), and noting: "The private right of action created by … § 227(c)(5) is accordingly limited to redress for violations of the regulations that concern residential telephone subscribers."). Moreover, federal district courts in and beyond the Fifth Circuit have widely recognized that plaintiffs hoping to bring TCPA DNC claims must allege sufficient non-conclusory facts showing the subject phone number (*i.e.*, the number at which they received the alleged calls) is ***actually used*** for "residential" purposes, or will face dismissal under Rule 12(b)(6). *See, e.g., Cunningham v. Caribbean Cruise Lines, Inc.,* 2016 WL 7494871, at *2 (S.D. Fla. Dec. 29, 2016); *Hicks*, 2020 WL 9261758, at *5; *Smith* v. *Vision Solar LLC,* 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020); *Cunningham v. Politi,* 2019 WL 2517085, at *4; *Cunningham v. McDonald,* 2018 WL 6737418, at *2 (M.D. Tenn. Nov. 5, 2018), *report and rec. adopted,* 2018 WL 6198417 (Nov. 28, 2018); *Gillam v. Reliance First Capital, LLC,* 2023 WL 2163775, at *4 (E.D.N.Y. Feb. 22, 2023); *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *4. This has been true notwithstanding the FCC's rebuttable "presumption" regarding the "residential" use of phone numbers purportedly listed on the National DNC Registry. *See, e.g., Vision Solar LLC*, 2020 WL 5632653, at *3 (dismissing where the plaintiff did not sufficiently allege the "cell phone line in question is his residential phone, as required" to state such a claim). *See also* Case No. 2:20-cv-02185 (E.D. Pa.), Dkt. 1, ¶ 17 (dismissed complaint in *Vision Solar*, alleging plaintiff's cell phone number was on the National DNC Registry); *Hicks*, 2020 WL 9261758, at *5 ("Plaintiff argues at length that cellular phone numbers are eligible for listing on the Do Not Call registry … but his argument never returns to the facts of ***this*** case or the use of his phone.") (emphasis in original). *See also Morgan v. U.S. Xpress, Inc.,* 2018 WL 3580775, at *2 (W.D. Va. July 25, 2018) (dismissing similar TCPA claim applying only to "residential" lines, noting plaintiff's characterizations that her number is a "residential" line "are not factual allegations, but legal terms drawn from the operative statute" and need to be accepted as true under Rule 12(b)(6)).

15

Furthermore, courts have also held whether someone qualifies as a "residential subscriber" for purposes of a TCPA DNC claim generally depends on certain conditions, including for example that the subject number "is the primary means of reaching the individual at their residence—that is, there is ***no other landline or phone at their residence*** which is instead the primary means of reaching them" at their residence. *Mantha v. QuoteWizard.com, LLC*, 2022 WL 325722, at *6 (D. Mass. Feb. 3, 2022) (emphasis added). Applying these maxims further warrants dismissal of Count II here.

In this case, Plaintiff concludes in a ***single sentence*** that the cell phone number on which she purportedly received the alleged calls "is used by [her] or her personal, family, and residential use only." Dkt. 1, ¶ 27. Such bald allegations are insufficient to state a plausible TCPA DNC claim for at least two reasons. On the one hand, Plaintiff's conclusion that her number is used for "residential" purposes is not a fact, merely parrots the language of the statute, and thus need not be accepted as true by this Court under Rule 12(b)(6) when ruling here. *See Morgan,* 2018 WL 3580775, at *2. *See also Hicks*, 2020 WL 9261758, at *5 (dismissing TCPA DNC claim on this basis, where the plaintiff merely concluded that his cell phone number was "not associated with a business and is for personal use"); *Gillam*, 2023 WL 2163775, at *4 (same, dismissing with prejudice); *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *4 (dismissing on this basis, holding that alleged "personal" use of the subject number was insufficient, and noting that "[t]hese are facts that are easily within the knowledge of [p]laintiffs and can be pleaded to remove any doubt about … whether those numbers are for residential use"). On the other, Plaintiff does not allege any facts suggesting the cell phone number at issue here is the ***primary*** means of reaching her at her ***residence***, let alone that there is ***no landline or other phone at her residence*** that is the primary means of reaching her there. *See, e.g., Mantha,* 2022 WL 325722, at *6. Again, these facts are within Plaintiff's knowledge and could easily be pled, if they exist at all. That they were not is telling, and this failing underscores the fatal defects

in her DNC claim and in her Complaint overall. In short, under the weight of applicable federal authority above, Plaintiff has not plausibly alleged she is a "residential telephone subscriber" within the meaning of the TCPA's implementing regulations, which further dooms Count II to dismissal.

**Third**, it is also well-established that Section 227(c) of the TCPA "relates solely to telemarketing and solicitation calls." *Warnick v. Dish Network LLC,* 301 F.R.D. 551, 558 fn. 3 (D. Colo. 2014). Thus, to survive dismissal, Plaintiff must also plead sufficient plausible facts suggesting her receipt of a "telephone solicitation"—which in turn is defined in the TCPA's implementing regulations as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person" without their "prior express invitation or permission." 47 C.F.R. §§ 64.1200(c)(2), (f)(15). Moreover, Plaintiff must have received ***more than one*** "telephone solicitation" in a 12-month period to bring such a claim. *See, e.g., Nicholas Greene v. Select Funding, LLC,* 2021 WL 4926495, at *5 (C.D. Cal. Feb. 5, 2021) (dismissing DNC claim where the plaintiff "only alleged one telephone solicitation" because "more than one telephone solicitation is needed to trigger a violation").

Along these lines, however, courts have frequently dismissed DNC claims where the plaintiff fails to plead actual facts—beyond naked conclusions or simply parroting the statutory text—demonstrating that a call they received fits the statutory definition of a "telephone solicitation." *See, e.g., Dahdah v. Rocket Mortgage LLC*, 2023 WL 5941730, at *3 (E.D. Mich. Sept. 12, 2023) (dismissing DNC claim where plaintiff did not sufficiently allege the content of the calls at issue, such that the court could infer his receipt of an actionable "telephone solicitation" within the meaning of the regulations) (citing, *inter alia, Katz v. CrossCountry Mortg., LLC*, 2022 WL 16950481, at *6 (N.D. Ohio Nov. 15, 2022)); *Eggleston v. Reward Zone USA LLC*, 2022 WL 886094, at *7 (C.D. Cal. Jan. 28, 2022) ("Plaintiff simply relies on conclusory labels such as 'advertisement' and

'promotion' without any supporting factual detail. This falls short of Plaintiff's burden to plead sufficient factual matter to state a plausible claim" under Section 227(c).). Such is true here.

In this case, Plaintiff merely concludes that: (i) she "received a total of 22 pre-recorded telemarketing calls on this number, promoting American-Amicable's services"; (ii) because "[t]he calls were unwanted," she "did not answer several of the calls"; (iii) even though she admits that did not answer "several" of them, "the calls all used the same artificial voice message, which stated that it was 'James' from 'Senior Benefits' calling to sell a life insurance party [*sic*]" (but apparently not an ***American-Amicable specific*** policy), and (iv) <u>one</u> caller on June 19, 2023 transferred her to someone else who then "sold her an American-Amicable final expense policy." Dkt. 1 ¶¶ 28, 31, 35. Even assuming *arguendo* that the ***one*** call that she describes with any detail in her Complaint (*i.e.,* the call on June 19, 2023) qualifies as a "telephone solicitation" under the DNC rules, which is not conceded here, she pleads no actual facts beyond her bald conclusions supporting an inference that ***any other call*** of which she complains constituted an actionable "telephone solicitation." *See, e.g., Nicholas Greene,* 2021 WL 4926495, at *5 (dismissing claim where, as here, the plaintiff "only alleged one telephone solicitation" because "more than one … is needed to trigger a violation" and the plaintiff failed to allege "the content of the other calls that would allow the Court to reasonably infer that these other calls were solicitations."); *Gillam,* 2023 WL 2163775, at *3 (dismissing on this basis where the plaintiff "failed to allege sufficient facts regarding the content of the calls from which the [c]ourt could infer that the purpose of the calls was to encourage 'the purchase or rental of, or investment in, property, goods, or services'" where, as here, most of the alleged calls were not answered and "merely conclude[d], without any factual support, that [defendant's] agent 'solicit[ed] refinancing products'"); *see also Dahdah,* 2023 WL 5941730, at *3 (allegations that the defendant "made the calls for the purpose of selling mortgage products and services" insufficient to

demonstrate a "telephone solicitation" for a DNC claim). This Court should follow the weight of applicable authority cited above here, and should dismiss Count II on this additional basis.

**C.**     **Plaintiff Fails to Plead a "Knowing" or "Willful" TCPA Violation.**

Apparently attempting to justify seeking treble damages under the TCPA, Plaintiff also suggests, in purely conclusory fashion, that the purported TCPA violations were "knowing or willful." Dkt. 1, ¶¶ 59, 64. This is likewise insufficient under federal pleading standards and cannot survive dismissal under Rule 12(b)(6), either. *See, e.g., Sterling v. Securus Techs., Inc.*, 2020 WL 2198095, at *6 (D. Conn. May 6, 2020) (dismissing where allegations that TCPA violations were willful/knowing were mere legal conclusions unsupported by specific factual allegations); *Canary v. Youngevity Int'l, Inc.*, 2019 WL 1275343, at *9 (N.D. Cal. Mar. 20, 2019) (dismissing claim for alleged willful/knowing TCPA violations, in part, because it "consist[ed] of nothing more than bare-bones legal conclusions"); *Lary v. Trinity Physician Fin. & Ins. Servs.,* 780 F.3d 1101, 1107 (11th Cir. 2015) ("[T]he bare assertion in [plaintiff's] complaint that the defendants 'willfully' and 'knowingly' violated the [TCPA] was a legal conclusion, not an allegation of fact that we must accept as true."). Consequently, if the Court does not dismiss the entire Complaint (and it should), the Court should nevertheless dismiss these plainly-defective allegations under Rule 12(b)(6).

**D.**     **Additionally, Plaintiff's Requests for Injunctive Relief Should Be Dismissed Under Rule 12(b)(1) for Lack of Article III Standing.**

Finally, among other remedies, Plaintiff generally seeks injunctive relief. *See, e.g.,* Dkt. 1, ¶¶ 48, 60, 65 and Prayer for Relief. Yet, Plaintiff does not allege any facts in her Complaint suggesting that she is at risk of any ***future injury*** (*i.e*., of receiving additional calls from or on behalf of American-Amicable in the future), as is required to demonstrate Article III standing for injunctive relief, in TCPA cases or in any others. *See, e.g., Miller,* 2016 WL 7471302, at *2–4 (dismissing request for injunctive relief in TCPA case for lack of standing where no allegations suggesting

possible future harm to plaintiff); *Schaevitz v. Braman Hyundai, Inc.,* 437 F. Supp. 3d 1237, 1251–52 (S.D. Fla. 2019) (same). Nor could Plaintiff credibly allege such facts, as she readily admits in her Complaint that "the calls appear to have ceased on June 30, 2023." Dkt. 1, ¶ 38. Therefore, her requests for injunctive relief should be dismissed on standing grounds under Rule 12(b)(1), as well.

## V.    **CONCLUSION**

For all of the reasons stated above, and as may be provided to the Court prior to its ruling hereon, this Court should enter an order dismissing the Plaintiff's Complaint in its entirety.


Dated: April 8, 2024                                    Respectfully submitted,

                                                                **HUSCH BLACKWELL LLP**

                                                    By: /s/ Ryan A. Burgett

                                                        Ryan A. Burgett, TN BAR No. 33641
                                                        736 Georgia Avenue, Suite 300
                                                        Chattanooga, TN 37402
                                                        Tel: (423) 266-5500
                                                        Fax: (423) 266-5499
                                                        ryan.burgett@huschblackwell.com


                                                        John W. McGuinness (*Pro Hac Vice* to be requested)
                                                        A. Paul Heeringa (*Pro Hac Vice* to be requested)
                                                        MANATT, PHELPS & PHILLIPS, LLP
                                                        1050 Connecticut Avenue, NW, Suite 600
                                                        Washington, D.C. 20036
                                                        Telephone: 202-585-6500
                                                        Facsimile: 202-585-6600
                                                        jmcguinness@manatt.com
                                                        pheeringa@manatt.com

                                                        *Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on, April 8, 2024, a true and correct copy of the foregoing document was electronically filed with the Court's ECF system to be sent via the electronic notification system to all counsel of record in the above-captioned matter.

By: */s/ Ryan A. Burgett*
Ryan A. Burgett