**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| YAZMIN GONZALEZ, individually and behalf of classes of all persons and entities similarly situated, | |
| Plaintiff, | |
| v. | Case No. 1:24-cv-00065-RP |
| AMERICAN-AMICABLE LIFE INSURANCE COMPANY OF TEXAS, | |
| Defendant. | |

**DEFENDANT AMERICAN-AMICABLE'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

Defendant American-Amicable Life Insurance Company of Texas ("American-Amicable") hereby respectfully moves to dismiss the putative "First Amended Class Action Complaint" (*see* Dkt. 10, "FAC") filed by Plaintiff Yazmin Gonzalez ("Plaintiff") in this matter, in its entirety and with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6) and/or 12(b)(1), on the following grounds:

## I.   **<u>INTRODUCTION</u>**

Like its fatally-flawed predecessor, Plaintiff's FAC alleges, in a wholly conclusory fashion and still without requisite factual support, that American-Amicable violated certain provisions of the Telephone Consumer Protection Act (*i.e.,* 47 U.S.C. § 227, *et seq.*, the "TCPA"). Plaintiff's claims remain based on ill-described calls, purportedly made to her cell phone without her consent, by a caller who identified himself as "James" from "Senior Benefits." Despite amending, however, Plaintiff pleads nothing indicating American-Amicable bears any legal responsibility for those calls.

Indeed, as before, Plaintiff's FAC invites this Court to engage in a series of inferential gymnastics to hold American-Amicable liable under the TCPA. She does so based mainly on her vague, conclusory, speculative, and contradictory allegations about one "prerecorded message" call she allegedly received from "Senior Benefits" on June 19, 2023—a call that did not identify American-Amicable in any way, originated from a number she does not connect to American-Amicable, and that she now admits was ***transferred twice*** before she reached anyone who identified American-Amicable. The Court should decline this invitation, as such plainly contradictory allegations are inherently implausible; and it is axiomatic that merely regurgitating the legal elements of a claim without plausible supporting facts (as Plaintiff continues to do) is insufficient to meet federal pleadings standards or to withstand dismissal in any federal case. Further, as the FAC represents her second failed attempt to state a plausible claim here, she should not be offered a third chance, which would likely result in another equally flawed pleading similarly ripe for dismissal. As such, Plaintiff's entire FAC should be dismissed ***with prejudice*** for the following reasons:

**First**, the FAC should be dismissed under Rule 12(b)(6), as Plaintiff fails to state plausible claims for relief under the TCPA or to plead adequate facts supporting such claims, notwithstanding her amendments. To begin, to successfully plead ***any*** TCPA claim under any provision and avoid dismissal at the pleadings stage, all plaintiffs must first adequately allege a viable theory of liability against the defendant—*i.e.,* direct or vicarious liability. In this regard, Plaintiff still fails to plead sufficient non-conclusory facts supporting a plausible inference either that American-Amicable: (a) itself "***physically***" placed ***each*** phone call at issue, as required to plead direct TCPA liability; or (b) was in a common law agency relationship with (the touchstone of which is having sufficient "control" over) any third party who did physically call her and that party's call campaign, as required to plead vicarious TCPA liability. This defect, carried over from her original complaint and made worse by the contradictory allegations she added to her FAC, alone is fatal to her <u>entire</u> FAC.

**Second**, beyond the threshold issues above, Count II of the FAC fails and should be dismissed under Rule 12(b)(6) for the additional reason that Plaintiff still does not plead sufficient facts indicating there was a violation of the TCPA's National "Do-Not-Call" ("DNC") Registry provision (*i.e.,* 47 U.S.C. § 227(c)) and its related implementing regulations here.[1] On this front, Plaintiff fails to plead facts, beyond her bald conclusions, sufficient to show, *inter alia*, that she received more than one "telephone solicitation" (as defined by the statute) in a 12-month period physically "initiated" "by or on behalf of the same entity," as is also required to state such a claim.

**Third**, Plaintiff's conclusory allegations that any TCPA violation here was "willful" or "knowing," such that she would be entitled to treble damages, likewise do not meet federal pleadings standards. Therefore, those allegations should be dismissed under Rule 12(b)(6), at the minimum.

---

[1] Though not further discussed below, American-Amicable does not concede that any call was "prerecorded" under Section 227(b) of the TCPA, as Plaintiff invoked in Count I of the FAC.

**Lastly**, if the Court does not dismiss the entire FAC (and it should), it should still dismiss Plaintiff's requests for injunctive relief pursuant to Rule 12(b)(1) for lack of standing under Article III of the U.S. Constitution, at the minimum, because she does not plead any non-conclusory facts suggesting that she is at imminent risk of a possible future injury by American-Amicable here.

## II.   <u>RELEVANT ALLEGATIONS</u>

In pertinent part, Plaintiff's FAC alleges that her "residential telephone number" (which purportedly has a 915 area code) is "assigned to a cellular service" and "has been on the National Do Not Call Registry since she registered it there on February 15, 2022." Dkt. 10, ¶¶ 25-26. Plaintiff still claims that she "received a total of 22 pre-recorded telemarketing calls [on that cell phone number], promoting American-Amicable's services, including a June 19, 2023 call on which she was sold an American-Amicable policy." *Id.* ¶ 30. Plaintiff now attaches an Exhibit to her FAC that she characterizes represents a "complete list of the date and caller IDs for the calls [she allegedly] received"—which, upon further examination, shows that very few of the numbers were used more than once (in fact, only three of them were), they each originated from a variety of different Texas (and one non-Texas) area codes, and none used a (915) area code. *See id.* (citing Exhibit A thereto).

Yet, Plaintiff does not allege with any supporting facts that American-Amicable physically placed these calls, let alone connect them to American-Amicable such that it could be held directly or vicariously TCPA liable for them. Rather, Plaintiff admits that: (1) because the calls were "unwanted" she "did not answer three of the calls"—and thus, she would have no way of knowing if it was a live or prerecorded call or who placed it; and (2) for "those [calls] that [she] answered, the calls all used the same artificial voice message, which stated that it was 'James' from 'Senior Benefits' calling to sell a life insurance policy." *Id.* ¶¶ 32-33. Plaintiff also now alleges that "'James' is a robot that asks a series of questions before **transferring the call** to a [live] human." *Id.* ¶ 33

(emphasis added). Notably, however, Plaintiff still does <u>not</u> allege, *inter alia,* that: (1) American-Amicable's name appeared on her Caller ID for any calls; (2) American-Amicable is the owner or user of any of these numbers; (3) she called any of them back and reached American-Amicable; or (4) the supposed "voice message" that she heard identified American-Amicable or stated the caller was calling to sell her an American-Amicable specific policy. Instead, Plaintiff now concludes, albeit with zero factual support, that (1) "[t]he calls all came from illegally 'spoofed' [*i.e.*, fake] caller ID numbers to hide the fact that they were coming from American Amicable" and (2) "Senior Benefits" is merely a "fake name" used by American-Amicable to hide its identity. *Id.* ¶¶ 35-36, 48.[2] Plaintiff also readily admits that "[w]hen [all] the numbers [on her list] are called back, they are either disconnected or ring to local residents unrelated to" American-Amicable. *Id.* ¶ 35. In other words, Plaintiff now concedes that she cannot connect these phone numbers to American-Amicable, and she otherwise pleads no facts indicating who physically placed the initial "Senior Benefits" calls.

At best, Plaintiff alleges that, as to one call purportedly received on June 19, 2023, she "played along with the robot and subsequent agents" and was transferred to an unidentified live "individual who qualified her for an American Amicable [*sic*] policy" who, in turn, "stated that he was transferring the call to his 'underwriting department manager' named 'Michael,' who [then] sold her an American-Amicable final expense policy" on that call. *Id.* ¶¶ 39-40. In other words, Plaintiff now alleges the initial call she received from "James" from "Senior Benefits" on June 19 was **transferred twice** before she ever spoke to anyone identifying American-Amicable by name. *Id.*

---

[2] Considering <u>none</u> of the numbers Plaintiff claims were used to call her involved a (915) area code (*see* Dkt. 10 at Ex. A), like her cell phone purportedly has, this new conclusory allegation is automatically suspect. The purpose of spoofing today is not just to hide the caller's identity but also to make the recipient more likely to answer by using their same area code. This is more commonly known as "neighbor spoofing" (*i.e.,* it looks like it is coming from a neighbor). *See* FCC Consumer Alert, *"Protect Yourself Against 'Neighbor Spoofing,'"* Mar. 8, 2018, available at https://transition.fcc.gov/Daily_Releases/Daily_Business/2018/db0308/DOC-349632A1.pdf (last visited May 16, 2024). Here, the callers used random, and not even solely Texas, area codes.

Further, while Plaintiff now avers "Michael" purportedly "stated that he was calling from 'American-Amicable'" in "Waco, Texas" (*id*. ¶ 41), she does <u>not</u> allege Michael confirmed that the unidentified person who received the initial call from "Senior Benefits" and transferred it to him was an American-Amicable employee, or that American-Amicable itself physically placed that initial call. She also does <u>not</u> allege that *any* calls at issue (*see id*. at Exhibit A) (i) originated from the same (915) area code as her cell phone, (ii) a Waco, Texas area code (254), or (iii) just Texas—indeed, the first alleged call was from an *Alabama* (256) area code. *See* https://www.allareacodes.com/254 and https://www.allareacodes.com/256 (last visited May 16, 2024).[3]

Based on these vague and threadbare allegations, Plaintiff now implausibly concludes that the events surrounding the one alleged June 19 call (where she was eventually transferred to Michael) represent an "unbroken chain of smoking gun evidence" which "makes clear American Amicable *directly* placed the initial calls but merely lied about its identity until such time as a policy was sold." *Id*. ¶ 46 (emphasis added). Yet, her conclusion is ironic considering that: (a) she does not allege that she was "transferred" to *anyone else* (connected with American-Amicable or otherwise) other than for that *one* June 19 call; and (b) she alleges that she was transferred *twice*—by the "Senior Benefits" "robot" caller, then by an unnamed person (neither of which identified American-Amicable)— before even speaking to "Michael." This could hardly be classified as an "unbroken chain" of events making "clear" that American Amicable itself "directly placed" *any* phone calls to her.

In any event, Plaintiff compounds the irony by now emphatically alleging: (i) "Defendant

---

[3] American-Amicable respectfully requests that this Court take judicial notice of these facts when ruling on this Motion under Fed. R. Evid. 201(b) and (c). *See Norris v. Hearst Tr., 500 F.3d 454, 461 n.9 (5th Cir. 2007)* ("[I]t is clearly proper in deciding a [Rule] 12(b)(6) motion to take judicial notice of matters of public record."); *see also Herrera v. CarMax Auto Superstores Calif, LLC*, 2014 WL 3398363, at *2 (C.D. Cal. July 2, 2014) ("It is not uncommon for courts to take judicial notice of factual information found on the World Wide Web."); *Schleifer v. Lexus of Manhattan*, 2019 WL 4640055, at *4 (S.D.N.Y. Sept. 24, 2019) (taking judicial notice of area codes).

then *continued to call the Plaintiff*, including a call from the *same fake caller ID* playing the *same message* attempting to sell the *same insurance policy* on June 22, 2023"; (ii) "[d]espite buying the policy, the calls continued, once on the very same day"; (iii) she "ultimately received an additional four calls from Defendants [*sic*]"; and (iv) "the calls appear to have ceased on June 30, 2023." *Id.* ¶¶ 49-50 (emphasis original). Put differently, Plaintiff contends American-Amicable called her ***after*** selling her a policy using a "fake" name and numbers, which she says American-Amicable only did in the first place to hide its "identity until such time as a policy [i]s sold." Surely by then, there was no need for American-Amicable to hide its identity, let alone to call to sell her on a policy she already bought. Regardless, as shown below, these allegations are woefully insufficient to survive dismissal.

## III.   <u>APPLICABLE LEGAL STANDARDS</u>

Rule 12(b)(6) provides for dismissal where a plaintiff fails to sufficiently state a claim for relief. In this regard, any claim brought in federal court mandates the pleading of sufficient facts. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). A "bare assertion" and "conclusory allegation[s]" will not suffice. *Id.* Naked allegations without factual enhancements "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations omitted). A "formulaic recitation of the elements" of a claim also fails to meet the requisite pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, "although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead 'specific facts, not mere conclusory allegations'" to avoid dismissal. *Pelayo v. Wells Fargo Bank, N.A.*, 2014 WL 3513207, at *2 (W.D. Tex. July 14, 2014) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994)). Therefore, while federal district courts must generally accept a plaintiff's well-pled factual allegations as true when ruling on a Rule 12(b)(6) motion, they need <u>not</u> accept as true "[c]onclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d

776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). *See also Bancroft Life & Cas. ICC, Ltd. v. GRBR Ventures, L.P.,* 12 F. Supp. 3d 980, 988 (S.D. Tex. 2014) ("The court should not 'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'") (quoting *R2 Invs. LDC v. Phillips,* 401 F.3d 638, 642 (5th Cir. 2005)); *In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d 364, 389 (S.D. Tex. 2011), *aff'd sub nom.* 464 F.App'x 334 (5th Cir. 2012) (under Rule 12(b)(6), "unwarranted speculation … need not be afforded any presumption of veracity by this Court").

A lack of Article III standing further warrants dismissal of a complaint under Rule 12(b)(1), as the Court lacks proper subject matter jurisdiction over such claims. *See, e.g., Perry v. Brassell,* 2018 WL 5733173, at *2 (W.D. Tex. Oct. 18, 2018). Beyond the three traditional elements, to have Article III standing to seek injunctive relief, Plaintiff must allege plausible facts establishing "continuing, present adverse effects" traceable to American-Amicable's conduct. *O'Shea v. Littleton,* 414 U.S. 488, 495-96 (1974). Put differently, to have standing for injunctive relief in any federal case, all plaintiffs must adequately plead that "the threatened injury is 'certainly impending,' or [that] there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). Failure to plausibly allege this warrants dismissal on standing grounds. *See, e.g., Miller v. Time Warner Cable Inc.,* 2016 WL 7471302, at *2–4 (C.D. Cal. Dec. 27, 2016).

## IV.   <u>ARGUMENT</u>

In Count I of her FAC (*see* Dkt. 10, ¶¶ 70-73), Plaintiff invokes Section 227(b) of the TCPA, which provides *inter alia* that no person shall "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using … an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service…." 47 U.S.C. § 227(b)(1)(A)(iii); *see also* 47 C.F.R. § 64.1200(a)(1) & (2). In Count II (*see* Dkt. 1, ¶¶ 75-78), Plaintiff seeks relief under the National DNC Registry provision in Section 227(c) of the TCPA

which, along with its implementing regulations, prohibits *inter alia* the "initiat[ion]"of more than

one "telephone solicitation" call "by or on behalf of the same entity" in a 12-month period to a

"residential telephone subscriber who has registered his or her telephone number" on the National

DNC Registry. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). As demonstrated below, however,

Plaintiff fails to plead actual ***facts*** supporting these elements in her FAC, despite her amendments.

      **A.**      **The Entire FAC Should Be Dismissed Under Rule 12(b)(6) Because Plaintiff Fails to Plausibly Allege a Viable Theory of TCPA Liability.**

For starters, the entire FAC should be dismissed under Rule 12(b)(b) because Plaintiff still

does not plead sufficient facts supporting a viable theory of liability against American-Amicable.

There are two potential theories of liability under the TCPA: (i) direct liability; or (ii)

vicarious liability. *See Rogers v. Postmates Inc*., 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020)

(citing *Thomas v. Taco Bell Corp.,* 582 F.App'x 678, 679 (9th Cir. 2014)). As such, to be liable

under any provision of the TCPA, the defendant "must either (1) ***directly make*** the call, or (2) have

an ***agency relationship*** with the person who made the call." *Pascal v. Agentra, LLC*, 2019 WL

5212961, at *2 (N.D. Cal. Oct. 16, 2019) (emphasis added) (quoting *Abante Rooter & Plumbing v.*

*Farmers Grp., Inc*., 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018)). *Accord Cunningham v.*

*Daybreak Solar Power, LLC*, 2023 WL 3985245, at *2 (N.D. Tex. June 13, 2023) (citing

*Cunningham v. Politi,* 2019 WL 2519568, at *5 (E.D. Tex. Apr. 30, 2019), *report and rec. adopted,*

2019 WL 2524736 (June 19, 2019)). Failure to adequately plead these theories warrants dismissal

of any TCPA claim in its entirety, even if the plaintiff may have pled facts supporting other essential

elements. *See, e.g., Nelums v. Mandu Wellness, LLC*, 2023 WL 5607594, at *9 (D.N.M. Aug. 30,

2023) ("Because Plaintiff fails to satisfy the first elements of the TCPA and [an equivalent state

statute]—that Defendants were directly or vicariously liable for the text messages—the Court does

not reach Defendants' arguments regarding whether Plaintiff adequately plead the other elements"

of the asserted claims.); *Cunningham v. Daybreak Solar Power*, 2023 WL 3985245, at *2-3 (dismissing TCPA case **with prejudice** brought by some of the same counsel representing Plaintiff here, and asserting the same TCPA claims, on these bases alone). As shown below, Plaintiff's FAC fails to adequately allege either theory of liability in this case, warranting its complete dismissal.

As to the former theory, it is well-accepted both in and beyond the Fifth Circuit that direct liability under the TCPA applies ***only*** to persons or entities that "initiate" telemarketing calls, and that to "initiate" in this context means to "physically place" a phone call or send a text message. *Sheski v. Shopify (USA) Inc.,* 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (citing *In re Dish Network, LLC,* 2013 WL 1934349, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013)). *Accord Cunningham v. Daybreak Solar Power*, 2023 WL 3985245, at *2-3 (citing *Hunsinger v. Dynata LLC,* 2023 WL 2377481, at *5 (N.D. Tex. Feb. 7, 2023), *report and rec. adopted,* 2023 WL 2386710 (Mar. 4, 2023) and *Cunningham v. Lifestyles Dev., LLC*, 2019 WL 4282039, at *3 (E.D. Tex. Aug. 8, 2019), *report and rec. adopted,* 2019 WL 4277507 (Sept. 10, 2019)). *See also Brownlee v. Allstate Ins. Co.,* 2021 WL 4306160, at *1 (N.D. Ill. Sept. 22, 2021) (holding that, to avoid dismissal, all TCPA plaintiffs must allege facts to "allow the Court to reasonably infer that defendant is [directly] liable for ***each call***" at issue) (emphasis added); *Metzler v. Pure Energy USA LLC*, 2023 WL 1779631, at *6 (S.D.N.Y. Feb. 6, 2023) (dismissing on this basis, holding that all TCPA plaintiffs must first "allege facts from which the Court can plausibly infer that [d]efendant has direct liability, even if it is also plausible that a third party made the call" to avoid dismissal). This rule applies equally to claims brought under the TCPA's DNC provisions, as invoked here. *See Smith v. Direct Building Supplies, LLC*, 2021 WL 4623275, at *4 (E.D. Pa. Oct. 7, 2021) (dismissing DNC claim on this basis).

Thus, federal courts across the country have routinely dismissed direct TCPA liability claims under Rule 12(b)(6) that, like Plaintiff's, lack sufficient factual allegations demonstrating that the

defendant itself actually "made" or "initiated" the calls at issue in the sense of "'*tak[ing] the steps necessary to physically place a telephone call.*'" *Cunningham v. Daybreak Solar Power,* 2023 WL 3985245, at \*2 (quoting *Cunningham v. Lifestyles Dev., LLC*, 2019 WL 4282039, at \*3).[4] *See also Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at \*2 (E.D. Va. Apr. 15, 2019) (dismissing and holding "at the pleadings stage, [a TCPA] plaintiff must allege facts to support his conclusion or belief that defendant is the party that [physically] made the [violative] calls"). Put simply, there must be a "*direct connection* between a person or entity and the making of a call" for direct liability to attach. *In re Rules and Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 7980 (Jul. 10, 2015)

In this regard, however, "[m]erely alleging that [a defendant] 'made' or 'initiated' [a] call"—like what Plaintiff did here, at best—"is not sufficient to allege a [direct] TCPA [liability] claim" or to avoid dismissal under Rule 12(b)(6), without more. *Frank v. Cannabis & Glass, LLC,* 2019 WL 4855378, at \*2 (E.D. Wash. Oct. 1, 2019). *See also Cunningham v. Daybreak Solar Power*, 2023 WL 3985245, at \*2 ("At the pleading stage, the plaintiff must allege facts to support claim that the defendant is the party that [physically] initiated the phone calls."); *Woodard v. Health Ins. All.,* 2024 WL 942629, at \*3 (N.D. Ill. Mar. 5, 2024) (holding that, to avoid dismissal under Rule 12(b)(6), all "TCPA actions must allege some facts which are distinguishable from the statutory language of the TCPA itself to state a claim and survive dismissal."). This Court should rule similarly in this case.

As applied here, Plaintiff continues to omit any plausible non-contradictory facts from her FAC, beyond her many bald conclusions, supporting an inference that American-Amicable itself (as

---

[4] While various provisions of the TCPA use the terms "make" or "initiate" somewhat interchangeably, courts evaluating and ultimately dismissing conclusory direct TCPA liability claims like Plaintiff's under Rule 12(b)(6) (including those cited above and further below, and many others) have uniformly held that "make" or "initiate" in this context means to "physically" place the phone calls at issue. *See, e.g., Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at \*3–5 (N.D. Cal. Mar. 28, 2018); *Childress v. Liberty Mut. Ins. Co.*, 2018 WL 4684209, at \*3 (D.N.M. Sept. 28, 2018); *Hicks v. Alarm.com*, 2020 WL 9261758, at \*5 (E.D. Va. Aug. 6, 2020).

opposed to some third party, *i.e.,* "Senior Benefits") physically placed any of the calls at issue, as is indisputably required to plead direct TCPA liability and avoid dismissal under federal law. *See* discussion at pp. 3-6, *supra*. Rather, Plaintiff's FAC is more notable for what facts it does <u>not</u> contain.

For example, as noted above, Plaintiff still does <u>not</u> allege, *inter alia*, that: (i) American-Amicable owns or uses any of the phone numbers allegedly used to call her; (ii) any purported "prerecorded message" she received identified American-Amicable or offered to sell her an American-Amicable specific policy (instead, she concedes that the "messages" identified a third party called "Senior Benefits"); (iii) she called any of those numbers back and reached American-Amicable (in fact, she now concedes that they do not reach American-Amicable if called, *see* Dkt. 10, ¶ 35); or (iv) American-Amicable's name appeared on her Caller ID for any call—all of which ***could*** support an inference of direct TCPA liability in ***some*** cases, as other courts have held. *See, e.g., Smith v. Direct Building Supplies, LLC*, 2021 WL 4623275, at *3 (dismissing on this basis where complaint lacked such allegations, noting plaintiff "provide[d] no details specifying how [plaintiff] knew that [defendant] in fact placed these calls"); *Doyle v. GoHealth, LLC*, 2023 WL 3984951, at *4–6 (D.N.J. Mar. 30, 2023) (dismissing on this basis where, like here, the plaintiff did "not allege that the number associated with the call …belonged to [d]efendant" and "failed to allege that [callers] were attempting to sell him [Defendant's]-specific Medicare services"); *Aaronson*, 2019 WL 8953349, at *2 (dismissing on this basis, holding: "[W]ithout any facts to explain why plaintiff believes the identified phone number is owned by [the defendant], ... plaintiff has failed to plead facts sufficient to support a theory of direct liability under the TCPA because plaintiff's allegations do not show plausibly [the defendant] actually, physically initiated the telephone calls at issue."); *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *5 (W.D. Wash. Mar. 27, 2023) (dismissing, holding "[a] TCPA plaintiff must allege facts to support their belief that the defendant

placed the calls at issue, such as 'how the caller identified itself, the substance of the calls,' or other details revealing that the defendant actually took steps to place the calls.").

At best, Plaintiff alleges that she was **_transferred twice_** during <u>one</u> call on June 19, 2023—by "James" from "Senior Benefits" on the initial call, to an unidentified live person,[5] and finally to "Michael" who "sold her an American-Amicable final expense policy." Dkt. 10, ¶¶ 33, 37-40 (emphasis added). However, this puts American-Amicable at least two steps removed from that call. Moreover, myriad courts have correctly recognized that merely transferring an initial call to a defendant does <u>not</u> support an inference that the defendant itself physically placed the initial call, and thus does not suffice for direct TCPA liability, standing alone. _See, e.g., Cunningham v. Daybreak Solar Power_, 2023 WL 3985245, at *2 (dismissing similar case, where the plaintiff eventually spoke to defendant's employee after an initial prerecorded message identifying a third party, holding that such "facts failed to show whether [d]efendant physically initiated the phone call or whether the call was instead placed by a third-party telemarketer") (internal punctuation omitted).[6] This distinction is of critical importance in a TCPA case like this one, because **_transferring_** a call **_to_** the defendant is not the same as the defendant itself physically placing a call **_directly_** to the plaintiff, as these courts have correctly found (rather, it is the defendant who is **_receiving_** such a call), and thus is insufficient to plead direct TCPA liability. That Plaintiff allegedly received written communications "from American-Amicable" after that call (Dkt. 10, ¶¶ 43-44) does not support an inference that American-Amicable itself physically placed it, either. _See, e.g., Bank v. Vivint Solar,_

---

[5] Plaintiff does not allege that this person stated he was an American-Amicable **_employee_**, let alone that he confirmed that the initial call prior to the transfer was initiated by American-Amicable itself.

[6] _See also Bank v. Alleviate Tax, LLC_, 2024 WL 1332635, at *4 (E.D.N.Y. Mar. 28, 2024) ("[D]espite Plaintiff alleging that he was directly transferred to an Alleviate employee [] his pleadings still shed no light on who initiated the [initial] offending call, which is necessary to allege direct liability under the TCPA.") (citation omitted); _Landy v. Nat. Power Sources, LLC_, 2021 WL 3634162, at *3 (D.N.J. Aug. 17, 2021) (ruling similarly and dismissing on this basis); _Barnes v. SunPower Corp.,_ 2023 WL 2592371, at *3 (N.D. Cal. Mar. 16, 2023) (same).

*Inc.,* 2019 WL 2280731, at *3-6 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted sub nom.,* 2019 WL 1306064 (Mar. 22, 2019) (dismissing on this basis, notwithstanding allegation defendant called plaintiff 30 minutes after the violative call, holding the follow up call was "an insufficient basis upon which to infer that [the defendant physically] made the specific Prerecorded Call" at issue).

Moreover, it is equally well-established that a call merely offering the defendant's products, identifying the defendant by name, or made by a caller associated with the defendant in some fashion—which is <u>all</u> that Plaintiff alleges here with respect to a single call, at best—is not enough to plausibly allege direct TCPA liability or to avoid dismissal on that basis, without more. *See, e.g., Cunningham v. Daybreak Solar Power*, 2023 WL 3985245, at *2 (dismissing on this basis despite similar allegations); *see also Bennett v. Celtic Ins. Co.,* 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022) (dismissing, holding that "a defendant 'generally does not initiate calls [within the meaning of the TCPA] placed by third-party telemarketers,' even if the third party had acted on its behalf."); *Wick v. Twilio Inc.,* 2017 WL 2964855, at *3 (W.D. Wash. July 12, 2017) ("[M]erely offering a good or service for sale does not mean that a retailer [physically] initiates the marketing calls for that product" for direct liability); *Scruggs v. CHW Grp., Inc.,* 2020 WL 9348208, at *7-10 (E.D. Va. Nov. 12, 2020) (conclusory allegations that one caller expressly stated he/she was "associated with" the defendant and identified defendant by name were insufficient for direct or vicarious TCPA liability purposes); *Meeks*, 2018 WL 1524067, at *1-5 (finding no direct liability, even though at-issue text identified defendant by name and contained a hyperlink to its website).

In short, that Plaintiff was eventually transferred (twice) by the initial "Senior Benefits" caller to "Michael" on one call, her speculation that "Senior Benefits" is really a "fake" name used by American-Amicable to call her "directly," or her bald conclusions that the numbers used to place the calls were "spoofed," are of no moment here and cannot suffice to plausibly allege a direct TCPA

liability theory. *See also Brownlee*, 2021 WL 4306160, at *1 ("Defendant is not the sole seller of car insurance. Numerous other companies sell car insurance. Further, spoofing is not unique; it is entirely possible that another car insurance company similarly engaged in spoofing to contact the plaintiff.").

Moreover, thanks to her amendments, Plaintiff's FAC is chock-full of even more directly contradictory (albeit equally conclusory) allegations—all of which simply confirm that **she does not actually know who physically placed the at-issue calls** and, therefore, has not sufficiently pled a direct liability theory here. *See* discussion at pp. 3-6, *supra*. To give just a few poignant examples: (1) none of the numbers alleged used for any of the calls on her supposed "complete list" reflect the Waco, Texas area code (254), despite "Michael" purportedly expressly stating on the June 19 call that he was "calling from" Waco; (2) she alleges that some of the numbers used will now "ring to local residents unrelated to Defendant" if called back, rather than being disconnected, which does not support an inference that those numbers were "spoofed" or used by American-Amicable to call Plaintiff "directly" (if anything, that allegation supports an opposite inference—*i.e.*, that these "local residents" were actually who placed those calls using those numbers); (3) Plaintiff alleges that American-Amicable used a "fake" name and numbers to hide "its identity until such time as a policy was sold," and yet also that "Michael" identified American-Amicable by name before selling her a policy; and (4) she also alleges that American-Amicable inexplicably continued to call her using the same "fake" name and spoofed numbers to hide its identity even after selling her a policy, and was "attempting to sell her the same insurance policy" that she just bought. *Id.* On the whole, such obviously "[c]ontradictory allegations" not only fail to state a direct TCPA liability claim (not to mention simply defy all logic and common sense), but they also "are inherently implausible, and [thus] fail to comply with Rule 8, *Twombly*, and *Iqbal*" and cannot avoid dismissal in this or any case. *Hernandez v. Select Portfolio, Inc.,* 2015 WL 3914741, at *10 (C.D. Cal. June 25, 2015). *See*

*also Cicalese v. Univ. of Texas Med. Branch*, 456 F. Supp. 3d 859, 872, n.8 (S.D. Tex. 2020) ("'Where [a] plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss.'") (quoting *Carson Optical Inc. v. eBay Inc.,* 202 F. Supp. 3d 247, 255 (E.D.N.Y. 2016)).

Finally, other than employing a few legal buzzwords—like "agents" or calls being made "on behalf of American-Amicable" (*see, e.g.,* Dkt. 10, ¶¶ 39, 41, 57)—Plaintiff does not assert any factual allegations supporting an inference that American-Amicable was in a common law agency relationship with any third party that called her, let alone that American-Amicable had any "control" over the "manner and means" of any third party caller's call campaign (which is the key touchstone of vicarious liability and must be pled in any TCPA case[7]), even in a conclusory fashion. That Plaintiff now concludes in her FAC that all the calls were made "directly" by American-Amicable suggests she has disclaimed vicarious liability in this case altogether. Therefore, the FAC is subject to dismissal on vicarious liability grounds, as well. *See, e.g., Cunningham v. Daybreak Solar Power,* 2023 WL 3985245, at *3 (dismissing where the "[p]laintiff allege[d] no facts indicating that Defendant had any sort of control over" the alleged caller) (citing *Callier v. SunPath Ltd.,* 2020 WL 10285659, at *3); *Cunningham v. Lifestyles*, 2019 WL 4282039, at *5 (ruling similarly); *Moreland v. SunPath, Ltd.,* 2021 WL 6773100, at *3 (E.D. Tex. Sept. 10, 2021) (dismissing where agency allegations were merely conclusory) (citing *Horton v. SunPath, Ltd.,* 2021 WL 982344 (N.D. Tex. Feb. 16, 2021), *report and rec. adopted,* 2021 WL 977065 (Mar. 15, 2021)).

To the extent she is asserting such a theory, that Plaintiff was allegedly transferred by one caller to an unidentified person, who in turn transferred her to someone who sold her an American-Amicable policy, does not show American-Amicable had any "control" over the initial caller and its

---

[7] *See, e.g., Callier v. SunPath Ltd.,* 2020 WL 10285659, at *3 (W.D. Tex. Aug. 10, 2020).

call campaign and thus is irrelevant for vicarious TCPA liability purposes, as other courts have correctly recognized. *See, e.g., Childress,* 2018 WL 4684209, at *4 ("Mere conclusory allegations that the 'robot machine' belonged to Defendant, coupled with allegations that the initial call was transferred to Defendant's in-house telemarketer, are insufficient to establish that Defendant had the right to control the initiation of the telephone call to Plaintiff."); *Cunningham v. Health Plan Intermediaries Holdings, LLC,* 2018 WL 835222, at *6 (N.D. Ill. Feb. 13, 2018) (rejecting argument callers had apparent authority "simply because they mentioned Defendants' products on their calls and sent him paperwork featuring Defendants' names"); *Barnes*, 2023 WL 2592371, at *3 (dismissing on this basis where plaintiff did not plausibly allege the defendant had an agency relationship with the caller, notwithstanding that she alleged she was transferred to the defendant and received an email from the defendant after the call); *Hale v. Teledoc Health, Inc.*, 2021 WL 1163925, at *4 (S.D.N.Y. Mar. 25, 2021) ("[T]he inclusion of [defendant's] services in [the caller's] insurance bundle, alone, is insufficient to permit even a circumstantial inference that [the third party caller] called plaintiffs at [defendant's] direction or subject to [defendant's] control.").

* * *

All told, Plaintiff's "either/or" pleading tactic has been rejected time and again by countless federal courts in TCPA cases. Because she does not properly allege any specific, non-conclusory facts suggesting American-Amicable itself "physically" called her or had any "control" over a third party who did, this Court should dismiss her entire FAC under Rule 12(b)(6). *See, e.g., Cunningham v. Daybreak Solar Power,* 2023 WL 3985245, at *3; *Nelums,* 2023 WL 5607594, at *9.

**B.**     **Count II of the FAC Should Also Be Dismissed Because Plaintiff Fails to Plead Facts Supporting Other Essential Elements of a TCPA DNC Claim.**

Beyond her failure to plead a viable direct or vicarious liability theory, which alone is fatal to her entire FAC, Plaintiff's DNC claim in Count II fails for at least one other reason. That is because

it is well-established that Section 227(c) of the TCPA "relates solely to telemarketing and solicitation calls." *Warnick v. Dish Network LLC,* 301 F.R.D. 551, 558 fn. 3 (D. Colo. 2014). Thus, to survive dismissal here, Plaintiff must also plead sufficient plausible facts suggesting her receipt of a "telephone solicitation"—which in turn is defined in the TCPA's implementing regulations as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person" without their "prior express invitation or permission." 47 C.F.R. §§ 64.1200(c)(2), (f)(15). Moreover, Plaintiff must have received ***more than one*** "telephone solicitation" as defined by the statute in a 12-month period to bring such a claim. *See, e.g., Nicholas Greene v. Select Funding, LLC,* 2021 WL 4926495, at *5 (C.D. Cal. Feb. 5, 2021) (dismissing DNC claim where the plaintiff "only alleged one telephone solicitation" because "more than one telephone solicitation is needed to trigger a violation").

Along these lines, however, courts have frequently dismissed TCPA DNC claims where the plaintiff fails to plead actual facts—beyond naked conclusions or simply parroting the statutory text—demonstrating that a call they received fits the statutory definition of a "telephone solicitation." *See, e.g., Dahdah v. Rocket Mortgage LLC*, 2023 WL 5941730, at *3 (E.D. Mich. Sept. 12, 2023) (dismissing DNC claim where plaintiff did not sufficiently allege the content of the calls at issue, such that the court could infer his receipt of an actionable "telephone solicitation" within the meaning of the regulations) (citing, *inter alia, Katz v. CrossCountry Mortg., LLC*, 2022 WL 16950481, at *6 (N.D. Ohio Nov. 15, 2022)); *Eggleston v. Reward Zone USA LLC,* 2022 WL 886094, at *7 (C.D. Cal. Jan. 28, 2022) ("Plaintiff simply relies on conclusory labels such as 'advertisement' and 'promotion' without any supporting factual detail. This falls short of Plaintiff's burden to plead sufficient factual matter to state a plausible claim" under Section 227(c).). That is all Plaintiff did.

In this case, Plaintiff merely concludes that: (i) she "received a total of 22 pre-recorded

17

telemarketing calls on this number, promoting American-Amicable's services"; (ii) because "[t]he calls were unwanted," she "did not answer" at least three of the calls; (iii) the calls that she answered "all used the same artificial voice message, which stated that it was 'James' from 'Senior Benefits' calling to sell a life insurance policy" (but apparently not an ***American-Amicable specific*** policy); and (iv) <u>one</u> caller on June 19, 2023 transferred her to someone, who transferred her to someone else, who then "sold her an American-Amicable final expense policy." Dkt. 10 ¶¶ 30, 32, 33, 39-42.

Even assuming *arguendo* that the <u>one</u> call that she describes with any detail (*i.e.,* the call on June 19, 2023) qualifies as a "telephone solicitation" under the DNC rules, which is not conceded here, she pleads no actual facts beyond her naked conclusions supporting an inference that ***any other call*** of which she complains constituted an actionable "telephone solicitation" made "by or on behalf of" American-Amicable. This failing further supports dismissal of Count II of the FAC, under the vast weight of applicable federal authority. *See, e.g., Nicholas Greene,* 2021 WL 4926495, at *5 (dismissing claim where, as here, the plaintiff "only alleged one telephone solicitation" because "more than one … is needed to trigger a violation" and the plaintiff failed to allege "the content of the other calls that would allow the Court to reasonably infer that these other calls were solicitations"); *Gillam,* 2023 WL 2163775, at *3 (dismissing on this basis where the plaintiff "failed to allege sufficient facts regarding the content of the calls from which the [c]ourt could infer that the purpose of the calls was to encourage 'the purchase or rental of, or investment in, property, goods, or services'" where, as here, most of the alleged calls were not answered and "merely conclude[d], without any factual support, that [defendant's] agent 'solicit[ed] refinancing products'"); *Dahdah,* 2023 WL 5941730, at *3 (holding allegation that one call was placed "for the purpose of selling mortgage products and services" insufficient to plead that any call was a "telephone solicitation").

### C.   <u>Plaintiff Fails to Plead a "Knowing" or "Willful" TCPA Violation.</u>

Apparently attempting to justify seeking treble damages under the TCPA, Plaintiff also

suggests, in purely conclusory fashion, that the purported TCPA violations were "knowing or willful." Dkt. 10, ¶¶ 72, 77; *see also id.* ¶ 36 (asserting without any factual support that American-Amicable "knowingly" used a "fictitious" name and "spoofed caller ID numbers"). This is likewise insufficient under federal pleading standards and cannot survive dismissal under Rule 12(b)(6), either. *See, e.g., Canary v. Youngevity Int'l, Inc.*, 2019 WL 1275343, at *9 (N.D. Cal. Mar. 20, 2019) (dismissing claim for alleged willful/knowing TCPA violations, in part, because it likewise "consist[ed] of nothing more than bare-bones legal conclusions"). Thus, if it does not dismiss the entire FAC, the Court should still dismiss these plainly-defective allegations under Rule 12(b)(6).

### D. Additionally, Plaintiff's Requests for Injunctive Relief Should Be Dismissed Under Rule 12(b)(1) for Lack of Article III Standing.

Additionally, among other remedies, Plaintiff generally seeks injunctive relief. *See, e.g.,* Dkt. 10, ¶¶ 61, 73, 78 and Prayer for Relief. Yet, Plaintiff does not allege any facts in her FAC suggesting that *she* is at "imminent" risk of "future harm" by American-Amicable, as is required to demonstrate Article III standing for injunctive relief, in TCPA cases or in any others. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021); *see also Miller,* 2016 WL 7471302, at *2–4 (dismissing request for injunctive relief in TCPA case for lack of standing where no allegations suggesting possible future harm to the plaintiff); *Schaevitz v. Braman Hyundai, Inc.,* 437 F. Supp. 3d 1237, 1251–52 (S.D. Fla. 2019) (same). Nor could Plaintiff credibly allege such facts here, as she readily admits in her FAC that "the calls appear to have ceased on June 30, 2023." Dkt. 10, ¶ 50. Therefore, her bald requests for injunctive relief should be dismissed on standing grounds under Rule 12(b)(1), as well.

Apparently hoping to avoid dismissal on this basis, Plaintiff now concludes that, "[a]lthough the calls appear to have ceased on or about June 30, 2023, there remains a risk of harm to the Plaintiff" because "Defendant's [alleged] conduct of continually calling her multiple times within the same month, even after it sold her a policy, means that it has no qualms about operating and

continuing to operate its illegal prerecorded telemarketing call system." *Id.* ¶ 51. As noted above, however, it is implausible (if not non-sensical) to think American-Amicable would use a fake name and spoofed numbers to hide its identity before making a sale, only to identify itself before making the sale anyway (which would defeat the alleged reason for using the fake name and numbers), and then to keep doing so even after it makes a sale, after the proverbial cat is already out of the bag. And this does not show there is a "***imminent***" risk of Plaintiff receiving another call from or on behalf American-Amicable in the future, as is required to have Article III standing for injunctive relief (*see TransUnion* and *Driehaus*, *supra*), given that the last alleged call was nearly a year ago.

## V.   THE FAC SHOULD BE DISMISSED WITH PREJUDICE.

Finally, Plaintiff has already had a chance to replead and yet failed to cure the many fatal defects in her original complaint through her FAC, despite American-Amicable's prior motion to dismiss (*see* Dkt. 8) outlining those defects in exhaustive detail. And, in many way, Plaintiff made those defects far worse by including more contradictory (and thus inherently implausible) allegations. If she had more (or any) actual facts to allege, she could (and should) have alleged them by now. That she did not leads to but one inescapable conclusion: no such facts exists. Therefore, American-Amicable submits a dismissal with prejudice is appropriate. *See, e.g., U.S. ex rel. Siemens Bldg. Techs., Inc. v. Grot, Inc.*, 2005 WL 2012263, at *2 (E.D. Tex. Aug. 19, 2005) (citing *Hart v. Bayer Corp.,* 199 F.3d 239, 247 n. 6 (5th Cir. 2000)) (dismissing with prejudice where, as here, the party had a chance to re-plead but "failed to cure all of the relevant defects" after amending).

## VI.   CONCLUSION

For all of the reasons stated above, and as may be provided to the Court prior to its ruling hereon, this Court should enter an order dismissing Plaintiff's FAC in its entirety and with prejudice.

Dated: May 20, 2024                  Respectfully submitted,

**HUSCH BLACKWELL LLP**

By: /s/ Ryan A. Burgett

    Ryan A. Burgett, TN BAR No. 33641
    736 Georgia Avenue, Suite 300
    Chattanooga, TN 37402
    Tel: (423) 266-5500
    Fax: (423) 266-5499
    ryan.burgett@huschblackwell.com


    John W. McGuinness (*Pro Hac Vice* to be requested)
    A. Paul Heeringa (*Pro Hac Vice* to be requested)
    MANATT, PHELPS & PHILLIPS, LLP
    1050 Connecticut Avenue, NW, Suite 600
    Washington, D.C. 20036
    Telephone: 202-585-6500
    Facsimile: 202-585-6600
    jmcguinness@manatt.com
    pheeringa@manatt.com

    *Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I certify that on, May 20, 2024, a true and correct copy of the foregoing document was electronically filed with the Court's ECF system to be sent via the electronic notification system to all counsel of record in the above-captioned matter.

By: */s/ Ryan A. Burgett*
      Ryan A. Burgett