# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

YAZMIN GONZALEZ

           Plaintiff,

    vs.

AMERICAN-AMICABLE LIFE INSURANCE
COMPANY OF TEXAS

        Defendant.

Case No. 1:24-cv-00065

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
## AMERICAN-AMICABLE'S MOTION TO DISMISS

## I.    INTRODUCTION

Attempts by the robocalling industry to blame the victims of their calls for failing to allege "sufficient" facts to state a claim for direct liability because of actions those callers illegally take to conceal their identities and the source of the illegal calls they make are nothing new. Trial and appellate courts have had little trouble rejecting such tactics.

But now, it has come to this.

In its motion (ECF. No. 11) ("Motion" or "Mot."), the Defendant makes a bold assertion, alleging that the textbook investigation that the Plaintiff has conducted to ascertain the identity of each of the illegal prerecorded robocalls she received is somehow still insufficient to draw the inference at the pleadings stage that the calls she received came from American-Amicable. It says this is the case despite Plaintiff not only speaking to *two agents* who claimed to be in various departments, including the "underwriting department" of Defendant American-Amicable, but also receiving an American-Amicable life insurance policy as a result of the illegal calls she received, which all delivered the *same pre-recorded message* and bore similar indicia that they were all sent from the same place, including the same temporal proximity and use of completely randomized caller IDs.

After reading through the Defendant's Motion, there lies a boring ending and resolution: denial. The proper resolution of Defendant's motion requires the Court to permit this case to proceed to discovery to test the Plaintiff's claims because she has set forth a plausible claim for direct liability against American-Amicable. The motion to dismiss is based on illogical assumptions that minimize the Plaintiff's investigative pursuits while maximizing assumptions based on utterly false premises.

Defendant's hodgepodge of other attempts aimed at dismissing the case under Rules 12(b)(6) and 12(b)(1) fare no better because multiple courts and the FCC have rejected the

Defendant's underdeveloped arguments in this regard. Defendant's motion should therefore be denied in its entirety.

## II.   FACTUAL BACKGROUND

The original complaint in this matter was filed on January 22, 2024 against the Defendant, American-Amicable Life Insurance Company of Texas. (ECF No. 1). Defendant American-Amicable filed an essentially identical motion to dismiss to the instant one on April 8, 2024. (ECF No. 8). Plaintiff amended her complaint on May 6, 2024 to address the deficiencies raised in that motion. (ECF No. 10). In her Amended Complaint, the Plaintiff further detailed, in far greater detail than required at the pleadings stage, the investigative process whereby she was able to identify the Defendant as the caller who directly placed the calls, the factual basis for the relation of the calls to each other and how she engaged the caller to affirmatively identify who they were, including by purchasing the policy sold on the illegal calls. Specifically, not only has the Plaintiff alleged that she *answered the calls* in which American-Amicable was calling to offer its scam "life insurance" policy, but also that she purchased said policy from an individual identified as being in Defendant's underwriting department. (Am. Compl. ¶ 39–42). Defendant's instant motion follows. (ECF No. 11).

In it, the Defendant rests on the same faulty premises as presented in its original motion. Namely, the Defendant faults the Plaintiff at length for insufficiently and allegedly non-specifically alleging facts sufficient to give rise to the inference at the pleadings stage that American Amicable directly placed the calls. But any purported failure to plead additional facts resulted solely form the Defendant's own misconduct at hiding the source of the calls with an eye to its well-established playbook in filing such motions alleging a purported lack of factual basis, as it does routinely. This response follows.

### III.   LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the Rules demand only a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it rests." *Wampler v. Sw. Bell Tel. Co.*, 597 F.3d 741, 744 (5th Cir. 2010) (cleaned up). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Connelly*, 809 F.3d at 786–87. After identifying elements to set forth a claim and removing conclusory allegations, the Court must accept all well-pled factual allegations as true and determine if they give rise to relief. *Id.* A complaint may be dismissed only where it appears that there are not "enough facts to state a claim that is plausible on its face," not merely because the defendant proffers some contrary facts. *Twombly*, 550 U.S. at 570.

The standard for 12(b)(1) challenges for a lack of subject matter jurisdiction, which is only addressed at the end of the Defendant's brief, are well-settled in this circuit. Notably, there exist two types of 12(b)(1) challenges, each with their corresponding standards: facial and factual challenges. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Defendant appears to mount a facial challenge to the Plaintiff's complaint as it submits no additional evidence for the Cour to consider. A facial challenge goes to the sufficiency of the pleading itself, and in such a motion, the court must take the allegations of the complaint as true and construe them in the light

most favourable to the nonmoving party. *Id.* As with a motion under Rule 12(b)(6), a motion under 12(b)(1) should be granted only if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992). In sum, "It is inappropriate for the court to focus on the merits of the case when considering the issue of standing." *Grant ex rel. Fam. Eldercare v. Gilbert*, 324 F.3d 383, 387 (5th Cir. 2003).

## IV.   ARGUMENT

A.   *The Plaintiff has alleged direct liability in far greater detail than in other similar cases this Court has already determined made allegations sufficient to infer direct liability.*

In essence, the Defendant attempts the classic "we didn't do it" defense by disguising it as a challenge to the Plaintiff's allegations of direct liability at the pleadings stage. Rule 12(b)(6) is not an appropriate device for testing the truth of what is asserted in the complaint or for determining whether the plaintiff has any evidence to back up what is in the complaint. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002). However, that's precisely what the Defendant attempts to do here, making a red-herring argument that the Plaintiff has failed to state a claim because she has allegedly failed to set forth facts giving rise to direct liability that the Defendant placed the calls at issue. But that's a "red herring" that begs the question "who did, then?" *See Consol. Grain & Barge, Inc. v. Anny*, No. CIV.A. 11-2204, 2013 WL 486687, at *6 (E.D. La. Feb. 6, 2013). Nevertheless, the Plaintiff has met her burden of pleading facts sufficient to give rise to the inference that the Defendant placed the illegal calls at issue here.

The Defendant's "we didn't do it" argument is more properly the subject of a jury trial or at the very least a motion for summary judgment. These details surrounding the calls are more than sufficient to put Defendant on notice of the claim being asserted and that it is alleged to have made telemarketing calls directly to Plaintiff. Tellingly, the Defendant does *not* have any

explanation for why the Plaintiff ultimately was sold an insurance policy from the Defendant's insurance agent with the Defendant's name on it if it didn't place the calls. For all intents and purposes, Defendant attempts a smoke-and-mirrors game of purported deficiencies in the complaint in an ill-contrived effort to escape liability under the TCPA. Defendant, and only the Defendant, is in the best, and only, position to identify any contrary facts which would explain who else would have directly placed the calls and directly sold the Plaintiff its policy if not itself. It has not done so and instead elected to throw all its efforts into moving to dismiss the complaint based on allegedly inadequate allegations which were concocted entirely by the Defendant for exactly such a scenario. Defendant cannot be permitted to play games in such a manner.

Indeed, Defendant's own allegations for why it contends the complaint lacks sufficient allegations to give rise to the inference that the Defendant itself placed the calls is noticeably lacking and takes advantage of its own misconduct. It takes advantage of the Defendant's own misconduct in spoofing the caller IDs to random numbers such as to make them impossible to trace via subpoena to a telephone carrier and using the fake name "senior benefits" at the outset of the calls to cast doubt as to who placed the illegal calls. Moreover, the Defendant is tone-deaf to the fact that the calls ultimately ended up selling the Defendant's insurance policy.

Here, the Plaintiff pleads facts which permit the court to plausibly determine that the Defendant was directly responsible for the alleged conduct and that the Defendant acted unlawfully. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Begin with the caller IDs themselves. The Plaintiff alleged that every single one of the caller IDs the Plaintiff received was illegally– and randomly–spoofed "to hide the fact that they were coming from American Amicable." (Am. Compl. ¶ 35). Defendant's response to this well-pled factual allegation that the Defendant deliberately spoofed its caller IDs *to conceal its identity* turns this logic on its head, assuming

without factual or legal support that caller ID spoofing only benefits a caller if its end goal is to make it appear as if the call was coming from a local number, thus making the call more likely to be answered. (Br. at ECF p. 5, p. 5 n.2). While that is certainly one reason bad actors spoof caller ID numbers, it is far from the only reason, such as here, where Defendant spoofed its caller IDs to give itself the best opportunity at evading detection and now uses such misconduct to its advantage to cast doubt on the Plaintiff's allegations at the pleadings stage.

And despite the Defendant taking issue with the fact that the Plaintiff caught them red-handed during one of the calls, the Defendant completely ignores the spatial and temporal proximity between the other calls or the other indicia that indicated that all the calls originated from the same source–the Defendant. The Defendant does not at all provide *any* explanation why, for each of the calls the Plaintiff received, which occurred in the same spatial and temporal time frame with identically randomly spoofed caller IDs, the Plaintiff also received the same message with the same robot, "James" from "Senior Benefits." (Am. Compl. ¶ 33–36, Ex. A). The best it can muster is making an *ad-hominem* argument against the Plaintiff by calling her investigation as one that "compounds the irony" of the case by pointing to its own automated conduct in continuing to call the Plaintiff after it sold her a policy. (Br. at ECF p. 6–7.).

In this respect, the Defendant also ignores the fact that the Plaintiff received another call from the same caller ID, 737-310-3817. This is the same caller ID as the call during which the Plaintiff was indisputably sold an American-Amicable policy. If anything, such evidence points to the fact that Defendant's phone system somehow is able to track which calls it made resulted in sold policies and override its random caller ID generation logic or otherwise regenerate the same illegally spoofed caller ID. It might do this, for example, assuming that an individual who purchased a policy would have saved the spoofed caller ID in a contact book. In any event, the

Plaintiff has unquestionably set forth allegations at the pleadings stage would give rise to the inference that the calls originated from the same source. Whether or not they did is a matter to be further evaluated in discovery, not requiring the Plaintiff to speculate as to the reasons the Defendant sent the illegal calls that it did. Defendant's fingerprints of direct liability also appear in the factual circumstances of the call the Plaintiff received itself, during which she was *sold* an American-Amicable life insurance policy that was mailed from American-Amicable. (Am. Compl. ¶ 40-46). An explanation of each of the Plaintiff's factual averments in the Complaint and how each gives rise to the inference of direct liability will prove particularly instructive to the Court in this regard. The Plaintiff first spoke to a robot, which illegally and deliberately used the fake name "Senior Benefits" and "James" to qualify her. (Am. Compl. ¶ 36, 40). Defendant's attacks on these averments make little sense. (Br. at ECF p. 13, 14). It's unclear how the use of a robot or multiple agents at all puts "American-Amicable at least two steps removed from that call." (*Id.*).

Obviously, a TCPA wrongdoer like American-Amicable can program its robot to say whatever it wants, and it makes sense that it would want the robot (1) to ask qualifying questions and eliminate tire-kickers without involving its human agents, which it needs to pay salaries for, and (2) avoid disclosing American-Amicable as responsible at the outset, presumably because doing so would cause ill will for the Defendant's brand. Moreover, the use of agents in different departments of a company conducting illegal telemarketing is the norm in illegal telemarketing operations, allowing sophisticated telemarketers like American-Amicable to benefit from division of labour, task specialization, and maximize the productivity of higher paid employees.

As the call progressed from the robot to a human, the Plaintiff spoke to a human agent who merely collected the Plaintiff's basic information and demographical information. That agent did not give their name, nor did that agent state what American-Amicable department he

was working in. However, it makes sense that a profit-maximizing company would use such lower-paid agents to collect such information rather than delegating this task to presumably higher-paid "managers" in the "underwriting department." (Am. Compl. ¶ 40). It also makes little sense for this agent to state that he would transfer the call to "his" "underwriting department manager" if this individual did not also work at American-Amicable. (*Id.*). To the contrary, if the call was initially placed by some third-party as the Defendant insinuates and then transferred to American-Amicable, it makes more sense that this individual would have said that he was transferring the call to the insurance company, American-Amicable, not a manager at another department in the same company.

Moreover, the Defendant's theory of the case that the illegal call was instead a transfer call initiated by some third party does not make sense when one considers the fact that Michael, the American-Amicable employee to whom the Plaintiff spoke, immediately had all of the Plaintiff's information she provided to the previous American-Amicable agent at his fingertips at the very moment of transfer. (*Compare* Br. ECF p. 13 *with* Am. Compl. ¶ 41). Of course, the exact reason for why the call was transferred through multiple internal departments remains to be explored in discovery, but it stretches credulity to think that an American-Amicable employee would have such ready access to the Plaintiff's information collected by some uninvolved third-party as the Defendant claims. Rather, it is a far more reasonable inference to believe that the call was placed by Defendant as an initial matter simply transferred from one employee to another internally using some sort of system designed for this very purpose and specialization.

And turning to the Plaintiff's interaction with Michael, such evidence is among the strongest showing that American-Amicable was directly responsible for the calls. Michael admitted that he was an American-Amicable insurance agent. (Am. Compl. ¶ 41). His name

appeared on the policy that he mailed from American-Amicable's headquarters. (Am. Compl. ¶ 42, 43). He was the one that wrote the policy procured through American-Amicable's illegal telemarketing. (Am. Compl. ¶ 43). That the Plaintiff was ultimately to successfully identify the caller that called her illegally does not operate against the Plaintiff. *E.g.*, *FTC v. Lifewatch Inc.*, 176 F. Supp. 3d 757, 771 (N.D. Ill. 2016) ("But the telemarketers' admissions are not rendered invalid just because Mey (successfully) tricked them into (truthfully) revealing that they sold products for Lifewatch."). Indeed, other courts have found that insurance agents' involvement in calls is *prima facie* evidence of the insurer's liability. *Hossfeld v. Allstate Ins. Co.*, No. 20-CV-7091, 2024 WL 1328651, at *17 (N.D. Ill. Mar. 28, 2024); *Nater v. State Farm Mut. Auto. Ins. Co.*, No. 23-CV-1408-JES, 2024 WL 2155249, at *10 (C.D. Ill. May 14, 2024).

That the Defendant was not identified until this point does not operate against the Plaintiff or render her claims all the less plausible. At some point, the Defendant needs to identify who it is and what policy it is selling. However, an illegal telemarketer faces a precarious balancing act, needing to thread the needle between selling policies which will identify the caller and attempting to obfuscate its identity for as long as possible to eliminate complainers who might hurt the Defendant's brand but not be sufficiently invested in the TCPA's consumer protection mission to seek the calls to their natural conclusions. Moreover, it must avoid identifying itself for as long as possible while minimizing the number of potential customers that get suspicious and simply hang up.

Fortunate for consumers bombarded with telemarketing calls, other Courts have similarly held that the allegations are sufficient. *See, e.g., Taylor v. Suntuity Solar L.L.C.*, No. 8:23-cv-00694-MSS-AEP, 2024 U.S. Dist. LEXIS 38838, at *15-16 (M.D. Fla. Mar. 6, 2024) ("Plaintiff's allegations are sufficient to plead a claim for Defendant's direct liability under the

TCPA at this stage. Plaintiff alleges Defendant initiated the telemarketing calls. Specifically, Plaintiff alleges, 'The Plaintiff received calls from Suntuity Solar on at least January 31 and February 8, 2023.' Plaintiff further alleges: 'During both calls, Plaintiff was initially provided a generic, fake name, "solar of America."' 'The only real company identified during the calls was Suntuity.'" (cleaned up)); *Stemke v. Marc Jones Constr., LLC*, No. 5:21-cv-274-30PRL, 2021 U.S. Dist. LEXIS 181916, at *6-7 (M.D. Fla. Sep. 23, 2021) ("Sunpro's motion to dismiss goes beyond the pleading to challenge the merits of the alleged facts. Indeed, the crux of Sunpro's motion questions Plaintiff's allegations that Sunpro placed the subject calls. For example, Sunpro argues that Plaintiff fails to 'support' a plausible inference that Sunpro is directly or vicariously liable for the calls Plaintiff received because she does not allege facts that associate Sunpro to the calls allegedly at issue. But a review of the Amended Complaint belies this argument—Plaintiff alleges several times that she or her attorneys confirmed that Sunpro placed the subject calls. Plaintiff even includes the phone numbers and the dates she received the calls.").

In sum, the bulk of the Defendant's motion relies on its own misconduct and an underdeveloped explanation of the reasons certain things occur during illegal telemarketing calls to pull the wool over the Court's eyes in a vain attempt to convince this Court that the Plaintiff has not pled sufficient facts to demonstrate the Defendant's involvement at the pleadings stage. Recently, Magistrate Bemporad rejected this very tactic in another TCPA case and explained the unfounded nature of the Defendant's argument in *Cunningham v. Watts Guerra*, LLP. No. SA-22-CV-363-OLG (HJB), 2024 U.S. Dist. LEXIS 93370, at *4 (W.D. Tex. May 23, 2024).

In *Watts Guerra*, as here, the defendant attempted to argue that the plaintiff did not sufficiently allege direct liability for illegal calls which resulted, as here, in the plaintiff receiving

a signed retainer agreement from the defendant. The Court explained that the possession of a

signed agreement was sufficient to give rise to an inference of direct liability for the calls:

> Defendants argue that, while Plaintiff does allege he received automated calls from a
> rotating series of phone numbers, he "makes no allegation that any particular Defendant .
> . . made, or directed to be made, these calls." Without such specificity, Defendants
> contend, Plaintiff failed to state a plausible claim against any of the Defendants for a
> TCPA violation. . . . Plaintiff responds that, while "unable to identify which of the
> Defendants [in particular] placed, or caused to be placed, the robocalls," he did
> eventually "identify Defendants as the entities responsible for those robocalls." Plaintiff
> argues that his allegation of Defendants' joint involvement "is supported by . . . the
> retainer attached to the complaint, and the follow-up communications thereafter."

> Given Plaintiff's allegations that he was solicited by robocallers to file a Camp Lejeune
> claim, that the callers refused to identify themselves or the law firms on whose behalf or
> for whose benefit they were calling unless Plaintiff agreed to file such a claim, and in
> light of the documents Plaintiff received from WG LLC, Biltmore, Boxer, and Henson
> after agreeing (under a pseudonym) to file said claim, the Court should find that Plaintiff
> has raised a plausible claim against these Defendants.

*Watts Guerra*, 2024 U.S. Dist. LEXIS 93370, at *33–36 (cleaned up)

The Court in *Watts Guerra* also went on to explain why the "defendants' argument,"

identical to the one here that more specificity is required at the pleadings stage, was "untenable."

*Id.* at *36. It stated, "To require more would effectively immunize savvier TCPA violators from

liability—i.e., those with the wherewithal and means to use middlemen—or a series of

increasingly removed middlemen—to solicit business through prohibited robocalling operations.

Or, as Plaintiff put it, "Defendants' argument, if tenable, would reward robocallers for

attempting to obfuscate their identity in order to prevent TCPA liability." *Id.* (cleaned up). The

Court further concluded that adopting the defendants' argument would run afoul of recent Fifth

Circuit precedent, which requires a court to deem a claim "plausible" when "it relies on

reasonable inferences drawn from the later-revealed identity of the caller or their beneficiary."

*Id.* "Requiring anything more would demand speculation by the plaintiff." *Id.* (citing *Bryant v.*

*Ditech Fin., L.L.C.*, No. 23-10416, 2024 U.S. App. LEXIS 5100, at *7 (5th Cir. Mar. 1, 2024) (holding that "defendants cannot defeat plausible inferences using speculation.")).

But all the Defendant's motion does here is impermissibly speculate for pages and pages too numerous to outline in detail as to why the various factual allegations in the Plaintiff's complaint are insufficient to draw the inference that the Defendant placed the illegal calls complained of. The factual attacks here do not mandate dismissal. Instead, the motion attacks Plaintiff for facts that could have existed but didn't. It speculates that Defendant would have no basis to illegally spoof caller IDs randomly and faults the Plaintiff for its own misconduct in doing so. (Br. at ECF p. 11, 12). It speculates that Defendant has neither the wherewithal nor the incentive to lie about who it is and faults the Plaintiff for correctly identifying it, despite its illegal use of the fake name "senior benefits" (*Id.*). It speculates that it does not transfer calls but ignores the Plaintiff's allegations that the transfers appear to have been made internally between departments (*Id.* at p. 13). It speculates that the robot and first agent to whom the Plaintiff spoke had nothing to do with American-Amicable despite later agents having the Plaintiff's information and writing the Plaintiff an American-Amicable policy (*Id.* at 11–13).

And every single one of the cases the Defendant uses to argue that the Plaintiff has failed to sufficiently allege direct liability are easily distinguishable and have nowhere near the factual basis pled here giving rise to direct liability. They were deficient either because (1) they failed to distinguish between the conduct of various named-defendants in alleging that all of the defendants initiated the calls to them and/or (2) they failed to allege why they believed the defendant called them. In *Cunningham v. Daybreak Solar Power, LLC*, for example the plaintiff received calls which were identified as "The-Solar-Project.com," which were then admittedly *transferred* to the defendant. No. 4:22-CV-00599-O, 2023 WL 3985245, at *1 (N.D. Tex. June

13, 2023). On that basis, the Court held that there was no factual support for the contention that the defendant, and not The Solar Project, was directly liable for the calls at issue on the basis that The Solar Project was merely a trade name and no facts to demonstrate the exercise of vicarious liability and therefore dismissed the case. *Id.* at 3. Not so here. *No other entity* was named or associated with the calls other than American-Amicable and the generic name "Senior Benefits," which is an illegal fictitious name used by the Defendant to obfuscate its identity. Likewise, in *Aaronson v. CHW Grp., Inc.*, No. 1:18-CV-1533, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019), the complaint was "devoid of facts such as how the caller identified itself, the substance of the calls, or any other details from the telephone calls." Not so here, where the Plaintiff *obtained a life insurance policy* not only from the Defendant but *naming one of the individuals with whom the Plaintiff spoke during the illegal call*.

The other cases cited by the Defendant similarly lack the exemplary specificity as in the Plaintiff's complaint or misstate the court's holding entirely. For example, in *Frank v. Cannabis & Glass, LLC*, No. 2:19-CV-00250-SAB, 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019), the complaint was devoid of any facts indicating that Springbig, a cannabis marketing platform, sent text messages which named Cannabis & Glass, particularly when the plaintiff provided her number to Cannabis & Glass, not Springbig. Accordingly, the court dismissed the case as to Springbig. *Id.* And *Woodard v. Health Ins. All.* is also nothing like this case. There, the court dismissed a direct liability claim against HIA when the plaintiff alleged "in the same breath" that "a third party," not HIA, called her and lacked any allegations as to the third-party's agency. *Woodard v. Health Ins. All.*, No. 23 C 2630, 2024 WL 942629, at *2 (N.D. Ill. Mar. 5, 2024). Faced with this obviously *directly* contradictory assertion, the court dismissed the Complaint without prejudice, permitting her to allege a vicarious liability claim. *Id.* at *3.

No part of the TCPA requires the Plaintiff to make the allegations the Defendant says it does in order to support a finding of agency, nor are those allegations contradictory. American-Amicable cannot own or use the phone numbers used to call her because it deliberately and illegally spoofed them to hide its identity. As such, it is impossible for the Plaintiff to trace back the calls to American-Amicable on this basis, including by calling them back or by relying on the caller ID information for the party whose number was being spoofed, and this was done by design. Nothing about that is contradictory. And as explained above, it would be illogical and create bad will for Defendant's brand for it to use the American-Amicable name at the outset of an illegal prerecorded robocall instead of the generically-named "Senior Benefits," but must also thread a fine line between identifying itself and losing potential clients.

None of the cases cited by the Defendant hold that the TCPA requires a plaintiff to make such assertions either. For example, the Court in *Direct Building Supplies* held as insufficient investigative efforts where the Plaintiff did not *answer* a call but rather called the caller ID *back* and was connected to the Defendant. *Smith v. Direct Building Supplies LLC*, No. CV 20-3583, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021). Nevertheless, Court dismissed the claims without prejudice and later rejected *this very Defendant's* arguments with the *same* counsel on the basis of the *Direct Building Supplies* case. *Smith v. Am.-Amicable Life Ins. Co. of Texas*, No. CV 22-333, 2022 WL 1003762, at *2 (E.D. Pa. Apr. 4, 2022). This Court should reach the same conclusions as the Eastern District of Pennsylvania in holding sufficient allegations that during the calls the plaintiff was told that he was "speaking with American-Amicable" and allegations that the calls "concerned insurance benefits–American-Amicable's area of business." *Id.*

Similarly, in *Doyle v. GoHealth, LLC*, Court held insufficient allegations of direct liability when an agent stated that she worked for GoHealth but in the same breath "stated a

bunch of insurance companies that her company works with." *Doyle v. GoHealth, LLC*, No. CV 22-04291, 2023 WL 3984951, at *1 (D.N.J. Mar. 30, 2023). The Court held as insufficient for direct liability, among other things, the plaintiff's failure to allege the interrelatedness of the myriad entities with whom he spoke on the call, their failure to sell the Plaintiff anything from GoHealth, and the agents' contradictory representations as to whom they were with. *Id.* at *4–*5. The Court nevertheless granted leave to amend to make such allegations. *Id.* Not so here, where there is no contradiction and the only ascertainable entity here is Defendant, who sold the Plaintiff a policy. And *Rogers v. Assurance IQ, LLC* is strikingly similar to the facts of *Frank* and unlike the case here. There, the plaintiffs pled that a telephone platform company called Boomsourcing physically dialed the calls without pleading that "Boomsourcing was aware that Assurance IQ was using its platform to send pre-recorded calls." No. 2:21-CV-00823-TL, 2023 WL 2646468, at *5 (W.D. Wash. Mar. 27, 2023). Court also granted leave to amend. *Id.* at *9. Not so here, where Plaintiff has identified the steps Defendant took to place the calls, including by being able to transfer the call as among internal departments together with placing the information that Plaintiff provided during the call at each employee's fingertips.

The transfers in this case are nothing like the transfers or later calls in *Daybreak Solar* or *Vivint Solar*. As explained, in *Daybreak*, the caller stated that they were with a website called The Solar Project, who then admittedly transferred the call to the defendant. Not so here, where the only entity identified in the calls is the Defendant. Similarly, in *Vivint Solar*, the plaintiff received a prerecorded call from an entity calling to solicit solar panels, pled nothing about that call, including the caller ID or how it was connected to any subsequent calls, and then received a *second call* for solar panels from the Defendant 30 minutes after the first call. *Bank v. Vivint Solar, Inc.*, No. 18-CV-2555 (MKB), 2019 WL 2280731, at *2–*3 (E.D.N.Y. Feb. 25, 2019).

The Court in *Vivint Solar* blasted the plaintiff for failing to allege at all "that Bank believed that the [first] was placed by an agent of Vivint, let alone that such a belief was reasonable" and held that the plaintiff's reliance on subsequent communications which did not reference the first call did "not plausibly show that [defendant] authorized the [first] call." *Id.* Not so here, where the Plaintiff was sold the Defendant's scam policy during the same call.

The calls the Plaintiff received did not merely attempt to offer the Defendant's insurance policy, either. As in *Daybreak* and the other cases cited by the Defendant in this regard, any actor can state that they are calling to sell a particular product or service. But only those who either place the calls or have some vicarious liability for their placement are able to actually sell the products being sold. The two agents with whom the Plaintiff spoke during the call she investigated did not merely state their "association with" or even state they were calling on behalf of American-Amicable. Rather, the *only* entity named was the Defendant, and they evidently had the authority to bind the Defendant. *Brownlee v. Allstate* provides little solace to the Defendant and actually supports the Plaintiff in this regard. There, the plaintiff merely pled that she received facially unrelated calls from at least six different callers trying to sell her car insurance. No. 21-CV-1428, 2021 WL 4306160, at *1 (N.D. Ill. Sept. 22, 2021). In only three of the calls was the plaintiff affirmatively able to identify the Defendant, such as via email sent to her. *Id.* The plaintiff pled no way to connect the remaining three calls to the Defendant and so Court dismissed them without prejudice. *Id.* Here, the Plaintiff has affirmatively identified each of the calls which she received. She has done so either because of her investigative process and the temporal and spatial proximity of the calls, the completely randomly spoofed caller IDs used, and the use of the exact same prerecorded message on each of the calls.

In sum, then, especially in light of this Court's recent wholesale rejection of the Defendant's very argument in *Watts Guerra*, the Plaintiff has unquestionably pled a direct liability claim for relief under the TCPA because she has pled sufficient facts giving rise to the plausible inference that the Defendant directly placed the calls. Should this Court at all find the Plaintiff's pleading in this regard at all deficient or contradictory, the Court only need give the order granting the Plaintiff leave to amend and she will do so to rectify any perceived deficiency.

B.     *The Plaintiff has plainly alleged the requirements for a TCPA DNC claim because she alleges 22 calls in a one-month period to sell her the Defendant's insurance.*

As to its second reason for why it claims this case ought to be dismissed, the Defendant claims that the Plaintiff has failed to allege that she received more than one call in a twelve-month period to sell her a product or service. This argument stretches credulity and borders on the absurd. For starters, the Plaintiff has plainly alleged far more than one call in a twelve-month period. As the exhibit attached to the Amended Complaint indicates, the Plaintiff received 22 calls from the Defendant. (ECF No. 10-1). The Plaintiff was able to connect those calls to the Defendant because, despite coming from randomly spoofed caller IDs, mainly bearing the 737 area code, they all played the *same exact prerecorded message* and used the *same exact* robot at the outset of the calls. (Am. Compl. ¶ 30, 33, 34).

But even if the Court was unwilling to credit the Plaintiff's contention that all the calls were interconnected on the basis of the same prerecorded message, the interrelatedness of the two calls bearing the same 737-310-3817 caller ID cannot be denied. In the first such call, the Plaintiff amatively identified the caller as Defendant, as briefed above. In the second such of this call, which also bore the *same caller ID*, that call played the same message and attempted to sell the Plaintiff the *very same insurance policy*. (Am. Compl. ¶ 49). Thus, the Plaintiff has facially pled *at*

17

*minimum* two violative calls which came from the Defendant as required. Indeed, while denying a similar motion to dismiss regarding calls from the same Caller ID, courts have rejected the same argument. For example, in *Bird v. Pro Star Builders, Inc.,* No. 2:22-cv-03610-JLS-JEM, 2022 U.S. Dist. LEXIS 215155, at *7-8 (C.D. Cal. Nov. 28, 2022), which itself cited to other similar decisions, the court held:

> Further, it is reasonable to infer that Pro Star was responsible for the alleged February 24 unanswered call from the same number as the second call on April 19. Indeed, courts in other districts have recently found that a plaintiff has sufficiently alleged multiple calls from the same entity when he or she received more than one call from the same number but traced the calls back to the defendant after having answered only once. *See, e.g., Chapman v. Nat'l Health Plans & Benefits Agency, LLC*, 2022 U.S. Dist. LEXIS 138916, 2022 WL 3130225, at *7 (E.D. Mich. Aug. 4, 2022) (finding that plaintiff plausibly pleaded that four calls—including three unanswered calls—had come from the same defendant because they had originated from the same number and the plaintiff alleged that other individuals had complained about receiving solicitations from that number); *Spurlark v. Dimension Serv. Corp.*, 2022 U.S. Dist. LEXIS 120468, 2022 WL 2528098, at *3 (S.D. Ohio July 7, 2022) (finding that plaintiff who had ignored multiple calls from the same number until he answered and was [*8]  able to identify the caller plausibly pleaded that the calls were all placed by the defendant). The Court agrees that it is reasonable to infer that the same caller is responsible for calls from the same number, whether those calls are answered or not. Accordingly, the Court finds that Plaintiff has plausibly alleged that the two calls at issue came from Pro Star.

This Court should hold the same.

The Plaintiff also has plainly pled that the calls were to sell life insurance, as evidenced by the content of the prerecorded call. (Am. Compl. ¶ 33). The robot stated that it was calling to sell life insurance policies and asked questions to qualify the person for such policy, such as how much coverage they wanted. (*Id.*). The Defendant is unable to cite to any authority, and the Plaintiff has been unable to find any, holding that the TCPA requires a good or service to be sold by a particular specific brand name, as the Defendant claims, and no part of the statutory text so

requires. Were this the case, any would-be telemarketer could simply sidestep the TCPA's

prohibition against calling numbers on the Do Not Call Registry by failing to identify their goods

by name, thus providing a perverse incentive for them to hide their identity. Congress surely

could not have intended such an absurd result. Moreover, as explained above, the Defendant

threads a very fine line between identifying itself and getting bad press or a lawsuit.

C.     *The Defendant's unlawful conduct, including using illegally spoofed caller IDs and the*
       *fake name "Senior Benefits" demonstrates "knowing" and "willful" violations of the*
       *TCPA.*

       The TCPA provides for treble damages for any entity violating the TCPA "knowingly" or

"willfully." The Defendant claims that the Plaintiff's allegations of such damages were "purely

conclusory." However, such an argument ignores the specificity of the Plaintiff's allegations,

including the fact that the Defendant illegally spoofed its caller IDs in order to evade detection

and duck liability under the TCPA. Furthermore, it ignores the fact that the Defendant initially

used the fake name "Senior Benefits" at the outset of the calls to further hide its identity and

avoid ill will for its brand.

       In interpreting the willful or knowing standard, courts require only that a party's actions

were intentional, not that it was aware that it was violating the statute. *See, e.g.*, *Charvat v.*

*Allstate Corp.*, 29 F. Supp. 3d 1147, 1151 (N.D. Ill. 2014) ("willful or knowing violation of

TCPA requires only that defendant know of the facts constituting the offense"); *Bridgeview*

*Health Care Ctr. Ltd. v. Clark*, 2013 U.S. Dist. LEXIS 37310 (N.D. Ill. Mar. 19, 2013) ("[T]he

Court adopts the more common interpretation that 'willfully' or 'knowingly' simply requires that

the act be intentional or volitional, as opposed to inadvertent, and not that defendant must have

known that the conduct would violate the statute."). The aforementioned allegations plainly

demonstrate that the Defendant was taking intentional actions, including to hide its identity. The

Defendant cannot credibly allege that its actions in making calls with fake names and spoofed caller IDs were at all inadvertent. Rather, they are explicit and deliberate.

Furthermore, the Defendant has previously been sued at least three times for violations of the TCPA and was slapped by the SEC for illegally selling bogus life insurance policies and investments to military personnel and veterans. While discovery will further reveal the specifics regarding these lawsuits, the Plaintiff has plainly alleged with specificity that Defendant engages in telemarketing to generate new customers, (b) it used illegal caller ID spoofing and use of a fake name to do so and (c) did so with respect to the Plaintiff. Such allegations are more than sufficient to put Defendant on notice of the potential for the fact that a fact finder can determine that a violation of the TCPA was done in a "knowing" or "willful" manner.

D.      *Injunctive relief is particularly warranted here, as Plaintiff continues to receive calls and there is real risk of future harm.*

Defendant also moves pursuant to FED. R. CIV. P. 12(b)(1) to dismiss Plaintiff's claims for injunctive relief, arguing Plaintiff lacks Article III standing to obtain injunctive relief. Specifically, Defendant argues Plaintiff has not shown any risk of future injury.

Yet Plaintiff's allegations do establish a risk of future injury. The Plaintiff alleged that Defendant continues to make illegal calls. (Am. Compl. ¶ 49, 50, 51). Defendant has "no qualms about operating and continuing to operate its illegal prerecorded telemarketing call system." (*Id.* ¶ 51). And it has come to counsel's attention that the Plaintiff now continues to receive calls, although such calls remain to be investigated. As such, an injunction is necessary to stop their calling conduct. These allegations plausibly establish a risk of future harm. As a telephone user, Plaintiff is at risk of future telemarketing calls from Defendant. Defendant presents no facts or arguments whatsoever rebutting the risk of such calls from Defendant in the future and does not even admit that it is knocking it off.

And though the Plaintiffs alleges future harm, she is not required to:

> The Telephone Consumer Protection Act, 47 U.S.C. § 227 (b)(3), creates a private right of action and allows a Court to order injunctive relief, monetary relief, and treble damages. Plaintiff is not seeking a preliminary injunction, which would require a showing of likelihood of success on the merits and irreparable harm. Defendant argues that Plaintiffs allegations do not suffice to establish either prong, and are inadequate to state a claim for treble damages. . . . In *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1098 (11th Cir. 2004), the Eleventh Circuit differentiated statutory and non-statutory injunctions. . . . Where plaintiff sufficiently alleges a claim for a statutory violation, that is all that is required to request injunctive relief in a complaint.

*See Gutierrez v. Fla. Advert. & Mktg. Corp.,* 387 F. Supp. 3d 1410, 1411 (S.D. Fla. 2019).

Indeed, the Court in *Abramson v. AP Gas & Elec. (PA), LLC*, Civil Action No. 22-1299, 2023

U.S. Dist. LEXIS 18996, at *14-15 (W.D. Pa. Feb. 6, 2023) denied a similar motion to dismiss:

> Here, along with allegations that AP Gas is aware of the requirements of the TCPA, Abramson alleges the elements of a TCPA claim to satisfy a demand for injunctive relief: (1) ongoing telemarketing by AP Gas using automated calls to send prerecorded messages; (2) Abramson's receipt of at least eleven prerecorded calls from AP Gas between August 9 and 18, 2022, without his consent; and (3) injury in the form of disturbed solitude and annoyance as well as being temporarily deprived of the use of his phone. ECF No. 1 ¶¶ 19-21. These allegations adequately place him within the zone of interests protected by the TCPA, and allege a pattern and practice by AP Gas of violating the TCPA. These allegations are accepted as true, and permit an inference of future violations that the TCPA seeks to [*15] enjoin.

This Court should do the same.

## V.   CONCLUSION

This Court must deny Defendant's motion to dismiss in its entirety. Alternatively, to the extent that the Court finds that additional questions remain, it should permit the Plaintiff to amend to correct the deficiencies as necessary.

Dated: May 28, 2024

>*/s/ Anthony Paronich*
> Anthony Paronich
> Email:  anthony@paronichlaw.com
> PARONICH LAW, P.C.
> 350 Lincoln Street, Suite 2400
> Hingham, MA 02043
> Telephone:  (617) 485-0018
> Facsimile:  (508) 318-8100

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

>*/s/ Anthony Paronich*
> Anthony Paronich

Dated: May 28, 2024